Howard J. Rubin (HR 1768)
Jennifer Tafet Klausner (JK 1413)
Heath Rosenthal (HR 9081)
DAVIS & GILBERT LLP
1740 Broadway
New York, New York 10019
(212) 468-4800

Daniel S. Moretti (DM 6630)
LANDMAN CORSI BALLAINE & FORD P.C.
120 Broadway, 27th Floor
New York, New York 10271
(212) 468-4800

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVE BIEGEL,

            Plaintiff,

    -against-

DENTSU HOLDINGS USA, INC., DENTSU
AMERICA, INC., TOYO SHIGETA and
TIMOTHY ANDREE,

            Defendants.

07 Civ. 9653 (CM) (THK)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ..................................................................... 5

ARGUMENT ................................................................................. 7

I.    Legal Standard ...................................................................... 7

II.   Biegel's Sexual Harassment Claim Must Be Dismissed For Failure to State a Claim. ....................................................................... 8

    A.  Biegel Has Not Stated Facts Sufficient To Sustain a Continuing Violation Theory. ............................................................... 8

    B.  The Sharapova Picture — The Only Alleged Incident That Is Not Time-Barred — Does Not Constitute Sexual Harassment of Biegel. ........................................................................ 10

    C.  Taking All Four Allegedly Harassing Incidents Into Consideration, Biegel Still Has Not Pled Facts Sufficient to Sustain a Claim of Sexual Harassment. ........................................................... 12

    D.  42 U.S.C. § 1981 Does Not Apply to Biegel's Sexual Harassment Claim. ............................................................................ 16

    E.  DAI and Holdings Have a Complete Defense to Biegel's Sexual Harassment Claim under the Faragher/Ellerth Doctrine. .................. 16

III.   Biegel Has Not Stated a Claim of Religious Discrimination. ................... 18

    A.  Biegel Has Failed to State a Claim of Religious Discrimination Under Section 1981 ........................................................... 18

    B.  Biegel Has Not Stated A Claim for Religious Discrimination Under the New York State or City Human Rights Laws. .................... 18

IV.   Biegel Has Not Stated a Claim of Retaliation. ................................ 20

    A.  Biegel Never Engaged in a Protected Activity. ........................... 20

    B.  Biegel Has Not Pled a Causal Connection Between His Alleged Complaint About the Bathhouse and His Termination. .................... 22

V.   Biegel's Claims Against Holdings Must Be Dismissed Because Holdings Never Was Biegel's "Employer". ...................................... 23

i

VI.    Biegel's Defamation Claim Must Be Dismissed For Failure to State a Claim............................................................................................................... 24

CONCLUSION............................................................................................................... 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alfano v. Costello,*
   294 F.3d 365 (2d Cir. 2002)............................................................................15

*Alie v. NYNEX Corp.,*
   158 F.R.D. 239 (E.D.N.Y. 1994)..................................................................23

*Allen v. St. Cabrini Nursing Home, Inc.,*
   198 F. Supp. 2d 442 (S.D.N.Y. 2002),
   *aff'd*, 64 Fed. Appx. 836 (2d Cir. 2005) .....................................................20

*Anderson v. Conboy,*
   156 F.3d 167 (2d Cir. 1998)...................................................................16, 18

*Bascomb v. Smith Barney, Inc.,*
   No. 96 Civ. 8747 (LAP), 1999 U.S. Dist. LEXIS 353
   (S.D.N.Y. Jan. 15, 1999)................................................................................23

*Blackmon v. UNITE!,*
   No. 03 Civ. 9214 (GWG),
   2005 U.S. Dist. LEXIS 18004 (S.D.N.Y. Aug. 25, 2005) ...........................15

*Bracci v. N.Y.S. Dep't of Corr. Servs.,*
   No. 3:01-CV-01300, 2005 U.S. Dist. LEXIS 40893
   (N.D.N.Y. Sept. 30, 2005) ............................................................................10

*Brennan v. Metropolitan Opera Ass'n., Inc.,*
   192 F.3d 310 (2d Cir. 1999)...........................................................................11

*Burlington Indus., Inc. v. Ellerth,*
   524 U.S. 742, 118 S. Ct. 2257 (1998).................................................... 16-17

*Carchidi v. Kenmore Dev.,*
   123 Fed. Appx. 435 (2d Cir. 2005).............................................................20

*Chambers v. Time Warner, Inc.,*
   282 F.3d 147 (2d Cir. 2002)............................................................................7

*Chan v. New York City Transit Auth.,*
   No. 03 CV 6239 (ARR), 2004 U.S. Dist. LEXIS 16370
   (E.D.N.Y. July 23, 2004) ..............................................................................12

*Clark County. Sch. Dist. v. Breeden,*
    532 U.S. 268, 121 S. Ct. 1508 (2001) ..................................................................21, 22

*Curto v. Edmundson,*
    392 F.3d 502 (2d Cir. 2004), *cert. denied,*
    545 U.S. 1133, 125 S. Ct. 2944 (2005) ........................................................................7

*De Brasi v. Plaza Hotel,*
    Nos. 03 Civ. 5159 (LAP), 03 Civ. 5211 (LAP),
    2005 U.S. Dist LEXIS 8569 (S.D.N.Y. May 9, 2005),
    *aff'd,* 159 Fed. Appx. 321 (2d Cir. 2005) .................................................................13

*Faragher v. City of Boca Raton,*
    524 U.S. 775, 118 S. Ct. 2275 (1998) .................................................................. 16-17

*Ferraro v. Kellwood Co.,*
    440 F.3d 96 (2d Cir. 2006) ................................................................................... 16-17

*Garrett v. Garden City Hotel, Inc.,*
    No. 05 CV 0962 (JFB), 2007 U.S. Dist. LEXIS 31106
    (E.D.N.Y. Apr. 19, 2007) ..........................................................................................22

*Harris v. Forklift Sys., Inc.,*
    510 U.S. 17, 114 S. Ct. 367 (1993) ......................................................................10, 11

*Kendricks v. Westhab, Inc.,*
    40 Fed. Appx. 619 (2d Cir. 2005) ..............................................................................22

*Leibovitz v. New York City Transit Auth.,*
    252 F.3d 179 (2d Cir. 2001) ......................................................................................13

*Moll v. Telesector Res. Group, Inc.,*
    No. 04-CV-0805S,
    2005 U.S. Dist. LEXIS 43605 (W.D.N.Y. Sept. 29, 2005) ..........................................9

*Mormol v. Costco Wholesale Corp.,*
    364 F.3d 54 (2d Cir. 2004) ..................................................................................10, 11

*Murray v. Visiting Nurse Servs. of N.Y.,*
    No. 05 Civ. 5462 (RJS),
    2007 U.S. Dist. LEXIS 81151 (S.D.N.Y. Oct. 31, 2007) ...........................................15

*National R.R. Passenger Corp. v. Morgan,*
    536 U.S. 101, 122 S. Ct. 2061 (2002) .........................................................................9

iv

*Oncale v. Sundowner Offshore Servs., Inc.*,
   523 U.S. 75, 118 S. Ct. 998 (1998) ............................................................................11

*Osier v. Broome County*,
   47 F. Supp. 2d 311 (N.D.N.Y. 1999) ........................................................................14

*Parker v. N.Y.C. Off-Track Betting*,
   No. 93 Civ. 0754 (BSJ), 1998 U.S. Dist. LEXIS 5467
   (S.D.N.Y. Apr. 20, 1998) ..........................................................................................20

*Perry v. Ethan Allen, Inc.*,
   115 F.3d 143 (2d Cir. 1997) ......................................................................................15

*Prudent v. Caspi*,
   No. 04 Civ. 00725 (RPP), 2004 U.S. Dist. LEXIS 17011
   (S.D.N.Y. Aug. 25, 2004) ...........................................................................................8

*Robins v. Max Mara, U.S.A., Inc.*,
   923 F. Supp. 460 (S.D.N.Y. 1996) ...........................................................................23

*Runyon v. McCrary*,
   427 U.S. 160, 96 S. Ct. 2586 (1976) ..................................................................16, 18

*Schmidt v. State Univ. of N.Y. at Stonybrook*,
   No. 02CV6083 (SLT), 2006 U.S. Dist. LEXIS 27663
   (E.D.N.Y. May 5, 2006) .......................................................................................17, 21

*Spadola v. New York City Transit Auth.*,
   242 F. Supp. 2d 284 (S.D.N.Y. 2003) .......................................................................21

*Stepheny v. Brooklyn Hebrew Sch. for Special Children*,
   356 F. Supp. 2d 248 (E.D.N.Y. 2005) .......................................................................15

*Swierkiewicz v. Sorema*,
   534 U.S. 506, 122 S. Ct. 992 (2002) ...........................................................................8

*Trinidad v. New York City Dep't of Corr.*,
   423 F. Supp. 2d 151 (S.D.N.Y. 2006) ....................................................................9-10

*Valle v. Bally Total Fitness*,
   No. 01 Civ. 11614 (RCC),
   2003 U.S. Dist. LEXIS 17093 (S.D.N.Y. Sept. 30, 2003) .....................................19-20

*Wimmer v. Suffolk County Police Dep't*,
   176 F.3d 125 (2d Cir. 1999) ......................................................................................21

*Zacharowicz v. Nassau Health Care Corp.,*
   177 Fed. Appx. 152 (2d Cir. 2006) ........................................................................18

## STATE CASES

*Dempsey v. Intercontinental Hotel Corp.,*
   126  A.D.2d 477, 511 N.Y.S.2d 10 (1st Dep't 1987) .....................................23

*Erlitz v. Segal, liling & Erlitz,*
   142 A.D.2d 710, 530 N.Y.S.2d 848 (2d Dep't 1988) .....................................24

*Forrest v. Jewish Guild for the Blind,*
   3 N.Y.3d 295, 786 N.Y.S.2d 382 (2004) .....................................................10

*Gardner v. Alexander Rent-A-Car,*
   28 A.D.2d 667, 280 N.Y.S.2d 595 (1st Dep't 1967) .....................................24

*Goldberg v. Sitomer, Sitomer & Porges,*
   97 A.D.2d 114, 469 N.Y.S.2d 81 (1st Dep't 1983),
   *aff'd,* 63 N.Y.2d 831, 482 N.Y.S.2d 268 (1984) ..........................................24

*Khan v. Duane Reade,*
   7 A.D.3d 311, 776 N.Y.S.2d 281 (1st Dep't 2004) .......................................24

*Miccio v. Fits Systems, Inc.,*
   25 A.D.3d 439, 810 N.Y.S.2d 13 (1st Dep't 2006) .......................................10

## FEDERAL STATUTES

42 U.S.C. § 1981 ....................................................................................................10

## STATE STATUTES

N.Y.C. Admin Code § 8-502(d) .............................................................................10

N.Y. C.P.L.R. § 214 ...............................................................................................10

N.Y. C.P.L.R. § 3016(a) .........................................................................................24

N.Y. Exec. Law §§ 290, 296 *et seq* ......................................................................10

Defendants Dentsu Holdings USA, Inc. ("Holdings"), Dentsu America, Inc., formerly DCA Advertising, Inc. ("DAI"), Toyo Shigeta ("Shigeta") and Timothy Andree ("Andree"), (together, "Defendants"), through their attorneys Davis & Gilbert LLP and Landman Corsi Ballaine & Ford P.C., submit this Memorandum of Law in support of their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Biegel's recent filing of this now highly publicized discrimination lawsuit is nothing more than the final act in a plan hatched by Biegel, a disgruntled former DAI employee, and his attorney, approximately one year ago, to get DAI to pay him an exorbitant amount of money despite Biegel's lawful termination.

The gravamen of the Amended Complaint is that Biegel was sexually harassed as a result of four separate and sporadic incidents: (1) photographs of women on a beach in Brazil in April 2004; (2) a trip to a brothel in Prague in June 2004; (3) a trip to a traditional Japanese bathhouse in Japan on October 3, 2004; and (4) a photograph of Maria Sharapova in April 2005. Biegel further claims that he was terminated because he is Jewish and/or that he was terminated in retaliation for a statement he claims he made to Shigeta that the trip to the bathhouse offended him (which even he alleges did not occur until *19 months* after the trip). (He does not allege that he ever complained about the other supposed incidents of harassment.) Finally, Biegel claims that the Defendants defamed him by accusing him of fraud and attempting to injure his reputation after he filed the original complaint ("Original Complaint") in this action. (The Original Complaint is attached as Exhibit A to the Declaration of Howard J. Rubin, dated November 26, 2007 ("Rubin Decl.").)

Defendants vigorously deny these claims. However, as demonstrated in detail below, even if this Court accepts the allegations in this Amended Complaint as true, all of

Biegel's claims should be dismissed as a matter of law. (The Amended Complaint is attached to the Rubin Decl. as Exhibit B.)

First, even assuming the allegations contained in Plaintiff's Amended Complaint to be true, he has failed to state a claim of sexual harassment. Only one of the four alleged incidents of sexual harassment, the Sharapova photograph, occurred within the applicable statute of limitations period. As this incident cannot legally be considered to have contributed to Plaintiff's claim of sexual harassment, it cannot be used to make Plaintiff's otherwise untimely allegations timely. Therefore, the allegations relating to the Brazil photographs, the brothel and the bathhouse, all of which occurred outside the limitations period, cannot be considered in support of Plaintiff's claim.

Thus, the only timely incident that can be considered in support of Plaintiff's sexual harassment claim is that Shigeta allegedly took a photograph of Maria Sharapova, in a public setting, while she was resting in a director's chair, during a photo shoot. This single photograph is insufficient to support Plaintiff's claim of sexual harassment because it does not meet the requisite severe or pervasive standard. Moreover, Biegel does not even allege — nor could he in good faith — that the Sharapova photograph harassed him because of his sex.

Furthermore, even if all four of the alleged sexually harassing incidents are considered, Plaintiff has still failed to establish a claim. Significantly, the fact that Biegel never complained to anyone at DAI about the alleged brothel, the Brazil photographs or the Sharapova photograph, and waited approximately *19 months* until after the trip to the bathhouse to allegedly discuss that trip with Shigeta, demonstrates that he was not subjectively offended by any of the allegedly sexually harassing incidents. In addition, Plaintiff has not alleged, nor can he, that any of the alleged incidents of sexual harassment affected the terms and conditions of his

employment.  To the contrary, Biegel claims that he "always performed his work in an exemplary manner, and consistently met or exceeded all of his employer's legitimate expectations."  Moreover, these few incidents, which occurred over the three and a half years that Biegel was employed by DAI, are not pervasive or severe.    Accordingly, even if all four of the alleged incidents are considered, Biegel has failed to state a claim of sexual harassment.

Even if the Court were to find that Biegel has stated a claim of sexual harassment, the Amended Complaint nevertheless must be dismissed as to Holdings, which was never his employer, and DAI under the Faragher/Ellerth defense.  As alleged in the Amended Complaint, DAI maintained a sexual harassment grievance policy, and Biegel failed to make use of it. Biegel alleges that he never complained about the allegedly harassing incidents except for the bathhouse, and even his alleged complaint about the bathhouse came far too long after that incident to prevent Holdings and DAI from asserting a successful defense under the Faragher/Ellerth doctrine.

Likewise, the Amended Complaint does not allege a single fact to support Biegel's fabricated claim that he was terminated because he is Jewish.  Instead, the allegations of the Amended Complaint demonstrate that DAI employs Jewish individuals in high positions of power, including its current President, supporting an inference of non-discrimination — the exact opposite of what Biegel needs to plead to establish a *prima facie* case of religious discrimination.

In addition, Biegel has failed to make out a *prima facie* case of retaliatory termination because the Amended Complaint does not allege that he engaged in a protected activity.  The bathhouse, which is described by well-known travel guides as a classy, family establishment that is visited by thousands of people every week, is clearly not objectively offensive, nor did Biegel find it to be offensive, as described above.  Thus, Biegel's alleged

conversation with Shigeta about the bathhouse was not a complaint made with a reasonable, good faith belief that the trip there was sexually harassing. Biegel's retaliation claim also fails because he did not allege a causal connection between his alleged conversation with Shigeta about the bathhouse and his termination, which occurred approximately five and a half months later.

Finally, Beigel's new defamation claim should also be dismissed. Biegel has not only failed to set forth the precise words that allegedly give rise to his defamation claim, as required to state a claim, but he also failed to allege in his Amended Complaint the time, place and manner of publication of the allegedly defamatory statements. His complete disregard of the strictly enforced pleading requirements for a defamation claim warrants a dismissal of this claim.

Notably, Biegel alleged in his Amended Complaint that the Defendants retaliated against him for comments they allegedly made to the press after he filed his Original Complaint. Biegel indicates that he has filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that the Defendants violated Title VII of the Civil Rights Act of 1964 based on this new retaliation action, and he asserts that he will add this claim to his Amended Complaint once he receives a "right to sue letter" from the EEOC.

These basic arguments demonstrate the lack of merit of Biegel's claims and expose this suit for all that it really is – a vehicle for extracting unwarranted monies from Defendants. Further evidence of the true purpose of Biegel's Amended Complaint, however, is the fact that Biegel and his attorney prepared this Amended Complaint almost a year ago, but they did not file it until a few weeks ago. Instead, Biegel and his lawyer sent it to several DAI executives and threatened to send it to DAI's biggest clients, all in an attempt to interfere with DAI's relationships with such clients. In an extensive exchange of correspondence, counsel for

4

Defendants sent multiple letters to Biegel and his attorney thoroughly briefing the legal and factual issues that support a complete dismissal of the Amended Complaint (along with pages of exhibits and other evidence supporting these arguments).

Notwithstanding the multiple legal arguments advanced by Defendants, as well as the evidence that clearly demonstrates that Biegel was not subjectively offended by the four sporadic incidents alleged in the Amended Complaint as the basis for his sexual harassment claim, Biegel and his lawyer sent the proposed complaint (before it was filed) to DAI's two biggest clients. They also emailed Maria Sharapova's agent and told the agent about the proposed complaint in a last-stab attempt to get money from Defendants. Then, months later, when their demands were not met, they ultimately filed the Original and Amended Complaints, tarnishing the reputations of innocent people in trade journals, general press and newspapers.

Although the Defendants vigorously deny the allegations in the Amended Complaint, even accepting them as true, this Court should grant the instant motion to dismiss for Biegel's failure to state claims of sexual harassment, religious discrimination, retaliatory termination and defamation.

## STATEMENT OF FACTS

The Amended Complaint alleges that Holdings and DAI are part of a Japanese corporation that is the world's largest advertising agency, (Amended Complaint ("Cplt.") ¶ 10), and that DAI is a wholly owned subsidiary of Holdings. (*Id.* ¶ 6.)

Shigeta was the President of DCA Advertising, Inc., which later changed its name to DAI. (*See id.* ¶ 8.) On or around June 1, 2006, Shigeta was promoted to Chairman of the Board of Holdings and Andree was hired as Chief Executive Officer ("C.E.O.") of DAI. (*Id.* ¶¶ 8, 9, 44; Declaration of Douglas Fidoten, dated November 26, 2007 ("Fidoten Decl."), ¶ 1.) Andree remains the C.E.O. of DAI. (Cplt. ¶ 9.) Around the same time, Douglas Fidoten

("Fidoten") was promoted to President of DAI, and he remains in that position to date. (Fidoten Decl. ¶ 1.) Fidoten is Jewish. (*Id.* ¶ 36.)

DAI hired Ron Rosen ("Rosen") as its Executive Creative Director. (Cplt. ¶ 13.) Rosen is Jewish. (Cplt. ¶ 15.) Rosen reported directly to Shigeta when Shigeta was the President of DAI and then to Fidoten when Fidoten became DAI's President. (*See id.* ¶ 14; Fidoten Decl. ¶ 1.)

DAI hired Biegel as a Senior Vice President, Group Creative Director on May 1, 2003. (Cplt. ¶¶ 11, 12.) Biegel is Jewish. (*Id.* ¶ 15.) Biegel reported directly to Rosen, who was DAI's Executive Creative Director. (*Id.* ¶ 13.) DAI also hired Neal Gomberg ("Gomberg") as a Senior Vice President, Group Creative Director. (*See id.* ¶ 39.) Gomberg is Jewish. (*Id.*)

On November 17, 2006, Biegel was terminated from DAI. (*Id.* ¶ 47.) At that time, Shigeta had been promoted to Chairman of Holdings and was no longer the President of DAI. (*Id.* ¶¶ 44, 45; Fidoten Decl. ¶ 1.) Biegel does not allege that he was replaced (and he was not). (*See* Cplt. ¶ 48.)

As part of his employment with DAI, Biegel often traveled for work. (*See e.g., id.* ¶¶ 18, 34.) In or around April 2004, Biegel went on a business trip to Brazil with Shigeta. (*Id.* ¶ 34.) In or around June 2004, he went on a business trip to Prague in the Czech Republic to shoot a commercial for one of DAI's largest clients, Canon. (*Id.* ¶ 18.) Also in attendance on that trip was Shigeta and Scott Weitz ("Weitz"), an independent producer who conducts business with DAI. (*See id.* ¶ 19.) Weitz is Jewish. (*Id.*) In early October 2004, Biegel traveled for work to Tokyo, Japan with Shigeta, Rosen, and Fidoten. (*See id.* ¶ 36; Fidoten Decl. ¶ 2.) In or around April 2005, Biegel went on a business trip to Florida to work on a photo shoot for an ad for Canon that involved the tennis star Maria Sharapova ("Sharapova"). (Cplt. ¶ 35.)

On the trip to Prague, Biegel, Weitz and Shigeta allegedly visited a brothel together one night. (*Id.* ¶¶ 21, 23.) Biegel did not complain to anyone at DAI about the alleged brothel or any of the circumstances surrounding the brothel. (*See id.* ¶ 40.) Similarly, Biegel never complained to anyone at DAI about the business trips to Brazil or Florida. (*See id.* ¶ 40.) On the trip to Tokyo on October 3, 2004, Plaintiff alleges that Shigeta took Fidoten, Rosen and Biegel to a traditional Japanese bathhouse. (*See id.* ¶ 38; Fidoten Decl. ¶ 2.) The entrance fee included a Yukata, a Japanese bathrobe. (Fidoten Decl. ¶ 2, Ex. A.)

DAI maintains a sexual harassment policy that instructs employees how to report allegations of sexual harassment. (*See* Cplt. ¶ 67; Fidoten Decl. ¶ 3, Ex. B.) A few days after DAI hired Biegel, he signed an Acknowledgement Form conceding the receipt of a copy of DAI's employee Manual. (Fidoten Decl. ¶ 3, Ex. C.) That Manual contains DAI's sexual harassment policy and the mechanisms by which employees must report alleged harassment. (*Id.* Ex. B.)

## ARGUMENT

### I.    LEGAL STANDARD

A court should grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) when it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Curto v. Edmundson*, 392 F.3d 502, 503 (2d Cir. 2004), *cert. denied*, 545 U.S. 1133, 125 S. Ct. 2944 (2005). "[O]n a motion to dismiss, a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, … matters of which judicial notice may be taken, or … documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted).

7

## II.    BIEGEL'S SEXUAL HARASSMENT CLAIM MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Biegel alleges only four separate and discrete instances of sexual harassment that occurred during the approximately three and a half years of his employment with DAI, the most recent of which occurred in April 2005, over two and a half years ago.[1] These incidents relate to: (1) photographs of women in Brazil (the "Brazil Photographs") in April 2004, (Cplt. ¶ 34), (2) a trip to a brothel (the "Brothel") in Prague in June 2004, (*id.* ¶ 18), (3) a trip to a bathhouse (the "Bathhouse") in Japan on October 3, 2004[2] (*see id.* ¶ 36), and (4) a photograph of Maria Sharapova (the "Sharapova Photograph") in April 2005 (*id.* ¶ 35).[3] As will be explained below, Plaintiff cannot state a claim of sexual harassment based on these incidents.

### A.    BIEGEL HAS NOT STATED FACTS SUFFICIENT TO SUSTAIN A CONTINUING VIOLATION THEORY.

The Court may only consider the Brazil Photographs, Bathhouse, and Brothel as part of Biegel's sexual harassment claim if he pled facts establishing that the Sharapova

---

[1] Biegel does not make a single allegation that Andree took part in the alleged sexual harassment. Nor could he because Andree was not even employed by DAI at that time. (*See* Cplt. ¶ 44; Fidoten Decl. ¶ 1.) Therefore, Biegel's claim of sexual harassment must be dismissed as against Andree. *See Prudent v. Caspi*, No. 04 Civ. 00725 (RPP), 2004 U.S. Dist LEXIS 17011, at *10 (S.D.N.Y. Aug. 25, 2004) ("For an individual to be held individually liable under [New York] state or city law the person must actively engage in the discriminatory conduct.").

[2] Biegel conveniently states in his Complaint that the Bathhouse trip occurred in October 2004 without specifying a date. (Cplt. ¶ 36.) However, the date the Bathhouse trip occurred was October 3, 2004. (*See* Fidoten Decl. ¶ 2.)

[3] Biegel also claims that Shigeta once told him about an incident involving a prostitute in Mexico (Cplt. ¶ 32) and alleged that this and other unspecified statements were "unwelcome and offensive" (*See id.* ¶¶ 49, 52.) Because Beigel has chosen not to provide any factual background as to these alleged comments, let alone specify the dates on which they allegedly occurred, Biegel has failed to provide sufficient notice to Defendants as to the parameters of these claims, and thus any claims arising out of these alleged incidents should be dismissed. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 513, 122 S. Ct. 992, 998 (2002) (holding that plaintiffs met Fed. R. Civ. P. 8(a)'s notice pleading standard where the complaint gave notice of the claims to be alleged, detailed the events underlying the claims, *provided relevant dates*, and included the ages and nationalities of some of the relevant persons involved).

Photograph was part of a continuing violation related to those incidents, all of which fall outside of the statute of limitations. Specifically, Biegel must allege that "an act contributing to the claim occur[red] within the filing period . . . ." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S. Ct. 2061, 2074 (2002). Any untimely actions must be alleged to have been "part of the same unlawful employment practice . . . ." *See id.* at 122, 122 S. Ct. at 2077.

The Sharapova Photograph, the only alleged incident that falls within the statutory limitations period cannot be said to have "contributed" to Plaintiff's claim of sexual harassment. *See Moll v. Telesector Res. Group, Inc.*, No. 04-CV-0805S, 2005 U.S. Dist. LEXIS 43605, at *22 (W.D.N.Y. Sept. 29, 2005) (declining to extend continuing violation theory to plaintiff's sexual harassment claim where plaintiff failed to allege any timely "sexually offensive comments or conduct").

Indeed, Biegel has not plead facts sufficient to establish that the three untimely acts (the alleged Brazil Photographs, Bathhouse, and Brothel incidents), are "part of the same" allegedly unlawful employment practice, nor can he do so because the alleged Bathhouse and Brothel incidents are significantly different in kind than the alleged Sharapova incident. The only remotely similar alleged conduct to the Sharapova incident may be the alleged incident involving photographs taken in Brazil. As opposed to the alleged Brothel and Bathhouse incidents, which plaintiff claims to have required him to participate in unwanted activity, whether sexual in nature or not, the alleged incidents involving the photographs are not alleged to have required any participation from Plaintiff, or that they were otherwise directed at Plaintiff because of his sex. Accordingly, Biegel's untimely allegations of sexual harassment are not saved by the continuing violation doctrine. *See Trinidad v. New York City Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) ("As a general matter, the continuing violation doctrine

is 'heavily disfavored in the Second Circuit' and courts have been 'loath' to apply it absent a
showing of 'compelling circumstances.'") (citations omitted); *Bracci v. N.Y.S. Dep't of Corr.
Servs.*, No. 3:01-CV-01300, 2005 U.S. Dist. LEXIS 40893, at *29 (N.D.N.Y. Sept. 30, 2005)
(refusing to apply the continuing violation doctrine where plaintiff's allegations of sexual
harassment did "not present a 'constant stream' of 'almost daily abuse' with 'no interruption'
that continued . . . into the limitations period").

> **B.    THE SHARAPOVA PICTURE — THE ONLY ALLEGED INCIDENT
> THAT IS NOT TIME-BARRED — DOES NOT CONSTITUTE SEXUAL
> HARASSMENT OF BIEGEL.**

Thus, the Sharapova Photograph is the only timely allegation that can be
considered in support of Plaintiff's sexual harassment claim. *See Miccio v. Fits Systems, Inc.*, 25
A.D.3d 439, 439, 810 N.Y.S.2d 13, 14 (1st Dep't 2006) (a cause of action is time-barred insofar
as it is based on acts that occurred more than three years before commencement of the action);
N.Y. Exec. Law §§ 290, 296 *et seq.*; N.Y. C.P.L.R. § 214; N.Y.C. Admin. Code § 8-502(d).[4]
Therefore, to establish his claim of sexual harassment, Plaintiff must show that Shigeta's
allegedly taking of one photograph of a woman, in a public setting, in a position Biegel
characterizes as "compromising," (Cplt. ¶ 35), caused his workplace to be "permeated with
discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter
the conditions of [his] employment and create an abusive working environment." *Mormol v.
Costco Wholesale Corp.*, 364 F.3d 54, 58 (2d Cir. 2004) (quoting *Harris v. Forklift Sys., Inc.*,
510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993)).[5]   In addition, Plaintiff must show that this

---

[4] While the Statute of Limitation under 42 U.S.C. § 1981 is four years, as discussed below,
Section 1981 does not cover claims for sexual harassment or religious discrimination.

[5] Claims brought pursuant to the New York State and City Human Rights Laws are analyzed
under the same standards as claims brought under Title VII. *Forrest v. Jewish Guild for the
Blind,* 3 N.Y.3d 295, 305 n.3, 786 N.Y.S.2d 382, 391 n.3 (2004).

photograph caused his work environment to be both subjectively and objectively hostile to be actionable, *id.*, and must occur "because of … sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S. Ct. 998, 1002 (1998) (internal quotations omitted).

Even assuming, *arguendo*, that Shigeta took the Sharapova Photograph, Biegel has failed to state a claim for sexual harassment. The Sharapova Photograph is an isolated incident that is neither severe nor pervasive, and the allegation that Shigeta allegedly took one photograph of a woman in a public setting does not constitute harassment directed at Biegel. Indeed, the Second Circuit has found that a plaintiff exposed to nude photographs *every day* in her office for approximately *two years* was not subjected to a hostile work environment because the pictures were not physically threatening or humiliating and did not unreasonably interfere or otherwise adversely affect her job performance. *See Brennan v. Metropolitan Opera Ass'n., Inc.*, 192 F.3d 310, 319-20 (2d Cir. 1999) (holding that nude photographs posted on a bulletin board and sexual banter do not rise to the level of actionable conduct).

In addition, Biegel cannot logically argue that the Sharapova Photograph harassed him "because of" his sex because that photograph is not any more offensive to men than it may be to women. As the Supreme Court has noted, a plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination … because … of sex." *Oncale*, 523 U.S. at 81 (internal quotations omitted). Moreover, the alleged photograph of Sharapova, seated in a director's chair, in a public setting, is not objectively offensive, and the Court can take judicial notice that it is not. (*See* Original Cplt. Ex. B.)

Finally, Biegel does not allege in the Amended Complaint that he was subjectively offended by the Sharapova Photograph, nor could he in good faith. The Sharapova

Photograph clearly did not alter the terms and conditions of Biegel's employment given that plaintiff admits that he continued working for DAI for over a year and a half after the Canon photo shoot in a purportedly "exemplary manner." (*See* Cplt. ¶ 17.) Nor does Biegel allege that he *ever* complained to *anyone* about the Sharapova Photograph. In fact, even though Biegel alleges that he had a conversation with Shigeta about the Bathhouse, he does not claim that he complained to Shigeta about the Sharapova Photograph. (*See id.* ¶ 40.) Even if the Court were to consider Biegel's alleged conversation with Shigeta as a complaint that he was harassed by the Sharapova Photograph, the fact that the alleged conversation occurred more than a year after the Sharapova Photograph was taken belies Biegel's claim that he believed that the Sharapova Photograph sexually harassed him. *See Chan v. New York City Transit Auth.*, No. 03 CV 6239 (ARR), 2004 U.S. Dist. LEXIS 16370, at *21 (E.D.N.Y. July 23, 2004) (dismissing harassment claim because plaintiff's 15 month delay in complaining would preclude a fact finder from being able to reasonably conclude that the workplace was hostile, or that the plaintiff perceived it to be).

For all of the reasons set forth above, the incident surrounding the Sharapova Photograph, even as alleged in the Amended Complaint, does not state a claim of sexual harassment. Accordingly, Biegel's entire sexual harassment claim must be dismissed because his only timely alleged sexually harassing incident is the Sharapova Photograph, which, for the reasons discussed, cannot form the basis of a sexual harassment claim.

C.    **TAKING ALL FOUR ALLEGEDLY HARASSING INCIDENTS INTO CONSIDERATION, BIEGEL STILL HAS NOT PLED FACTS SUFFICIENT TO SUSTAIN A CLAIM OF SEXUAL HARASSMENT.**

Similar to Biegel's allegations regarding the Sharapova Photograph, his claims regarding the Brazil Photographs, the Brothel and the Bathhouse do not constitute sexual harassment as a matter of law. Even if all four of the allegedly harassing incidents are taken into

consideration despite the fact that three of them are time-barred and Biegel has failed to allege

facts sufficient to support a continuing violation theory, and all of Biegel's allegations regarding

those incidents are taken as true, he *still* has failed to state a claim for sexual harassment.

As an initial matter, the Court should not even consider the alleged Brazil and

Sharapova Photograph incidents in any analysis of Biegel's sexual harassment claim.    As

described above, the Second Circuit has found that pictures of a much more graphic nature do

not constitute sexual harassment.  Moreover, the Brazil and Sharapova Photographs were neither

directed at Biegel nor directed at him because of his sex.  Critically, nowhere in the Amended

Complaint does Biegel even allege that he found these photographs offensive or that he

complained to anyone about them. *See  Leibovitz v. New York City Transit Auth.*, 252 F.3d 179,

182, 190 (2d Cir. 2001) (plaintiff could not sustain a claim of sexual harassment based on her

belief that other women in her company were harassed because such harassment was not directed

at her, did not affect the terms and conditions of her own employment, and did not create an

environment that was hostile to her because of her sex); *De Brasi v. Plaza Hotel*, Nos. 03 Civ.

5159 (LAP), 03 Civ. 5211 (LAP), 2005 U.S. Dist. LEXIS 8569, at *11 (S.D.N.Y. May 9, 2005)

(declining to consider two of five allegations of sexual harassment because those allegations did

"not feature any discriminatory behavior"), *aff'd*, 159 Fed. Appx. 321 (2d Cir. 2005).

With Biegel's allegations regarding the photographs out of the equation, his

sexual harassment claim consists only of the alleged Brothel and Bathhouse incidents, which

cannot be deemed pervasive or severe.  Additionally, Biegel has not alleged facts to support a

claim that he found either the Brothel or the Bathhouse subjectively offensive.  First, although

Biegel alleges he had a conversation with Shigeta about the Bathhouse, his failure to allege that

he complained to Shigeta or anyone else about the Brothel belies his claim that he found the

Brothel offensive. (*See* Cplt. ¶ 40.) Significantly, Biegel continued working for DAI for over approximately two and a half years after allegedly visiting the Brothel without ever complaining about it. He thus concedes that the alleged trip to the Brothel did not affect the terms and conditions of his employment. Similarly, the fact that Biegel waited approximately 19 months after purportedly visiting the Bathhouse before he allegedly spoke to Shigeta about it further demonstrates that it also did not alter the terms and conditions of his employment. (*See id.* ¶¶ 36, 39, 40.)

Furthermore, the Bathhouse is not objectively offensive. Biegel's description of the trip to the Bathhouse could not be any further from the truth and is an insult to Japanese culture. Shigeta took Biegel and the others to the Bathhouse to experience a traditional Japanese custom, not, as Biegel alleges, to embarrass them. A far cry from the seedy picture Biegel paints of the Bathhouse, well-known tourist guides such as Time Out Tokyo, Frommer's Tokyo, Lonely Planet Tokyo and Rough Guide to Tokyo depict the Bathhouse as a classy, clean and traditional family venue that includes a hot spring, massage services, bath areas (most separated by gender), Jacuzzis, saunas, sand baths and relaxation spaces, all meant to pamper its guests. (*See* Fidoten Decl. Ex. A.) The Court is respectfully requested to take judicial notice of these publicly available brochures. One guide calls the Bathhouse a "Japanese obsession" and another suggests that visitors should come during the week because as many as 6,500 bathers go to the Bathhouse on the weekends. (*Id.*) Moreover, three of the guides liken the Bathhouse to a "theme park" that has restaurants, souvenirs for purchase, and street performers to "keep the atmosphere jolly." (*Id.*) The guides also indicate that admission includes a colorful "yukata" (cotton kimono) and towels. (*Id.*) Thus, contrary to Biegel's allegations, he and everyone else attending the Bathhouse was provided with robes.

Even if the Court considers the alleged photographs in addition to the Bathhouse and the Brothel, Biegel still has failed to state a sexual harassment claim. Biegel alleges that he purportedly "always performed his work in an exemplary manner . . . ." (Cplt. ¶ 14.) As this Court is no doubt well aware, a hostile work environment claim must fail where a plaintiff concedes that there was no resulting disadvantage or adverse effect on his performance caused by the alleged sexual hostility. *See Alfano v. Costello*, 294 F.3d 365, 380 (2d Cir. 2002); *accord Murray v. Visiting Nurse Servs.*, No. 05 Civ. 5462 (RJS) 2007 U.S. Dist. LEXIS 81151, at *56 (S.D.N.Y. Oct. 31, 2007); *Blackmon v. UNITEA*, No. 03 Civ. 9214 (GWG), 2005 U.S. Dist. LEXIS 18004, at *42 (S.D.N.Y. Aug. 25, 2005). Accordingly, Biegel's sexual harassment claim should be dismissed on that ground alone.

Nor can these four alleged incidents, which stretched over a period of the three and a half years he worked at DAI, be said to be pervasive or severe. *See Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (incidents of harassment must be "more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive") (internal quotations and citation omitted); *Stepheny v. Brooklyn Hebrew Sch. for Special Children*, 356 F. Supp. 2d 248, 264 (E.D.N.Y. 2005) (utterance of racial epithet five times over a period of five months did not constitute harassment); *Osier v. Broome County*, 47 F. Supp. 2d 311, 323 (N.D.N.Y. 1999) (six allegedly harassing incidents over almost a year were sporadic occurrences not deemed pervasive).

For all these reasons, this Court should dismiss Biegel's claim of sexual harassment.

**D.    42 U.S.C. § 1981 DOES NOT APPLY TO BIEGEL'S SEXUAL HARASSMENT CLAIM.**

It is impossible to discern from Biegel's poorly drafted Amended Complaint which of his claims relate to which of his causes of action. However, it is "settled that Section 1981 does *not* prohibit discrimination on the basis of gender . . . ." *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998) (emphasis added) (citing *Runyon v. McCrary,* 427 U.S. 160, 167, 96 S. Ct. 2586, 2593 (1976)). Therefore, Biegel's sexual harassment claim must be dismissed to the extent it is based on Section 1981.

**E.    DAI AND HOLDINGS HAVE A COMPLETE DEFENSE TO BIEGEL'S SEXUAL HARASSMENT CLAIM UNDER THE FARAGHER/ELLERTH DOCTRINE.**

Even if the Court were to find that Biegel has stated a claim for sexual harassment, which he has not, his claim still must fail as to DAI and Holdings because they have a complete defense under the Faragher/Ellerth doctrine.

Under the well-known "Faragher/Ellerth" affirmative defense, an employer will not be liable for the harassing acts of its employees if the "the employer exercised reasonable care to prevent and correct promptly any [discriminatory] harassing behavior, and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ferraro v. Kellwood Co.*, 440 F.3d 96, 102 (2d Cir. 2006) (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S. Ct. 2275, 2293 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S. Ct. 2257, 2270 (1998)). Moreover, an employer will not be liable for harassment carried out by a supervisor if it can further demonstrate that "either (1) the employee's supervisor took no 'tangible employment action,' which involves an official company act, against the employee; or (2) any tangible employment action taken against the employee was not part of the supervisor's

discriminatory harassment." *Id.* at 101 (citing *Faragher*, 524 U.S. at 808, 118 S. Ct. at 2293; *Ellerth*, 524 U.S. at 765, 118 S. Ct. at 2270).

Biegel's assertion in the Amended Complaint that the Defendants did not maintain an "effective policy or remedial scheme for sexual harassment" is demonstrably false. (*See* Cplt. ¶ 67.)  On May 5, 2003, Biegel signed an Acknowledgement Form conceding the receipt of DAI's 1997 Policies and Procedures Employee Manual (the "Manual").  (Fidoten Decl. ¶ 3, Ex. C.)  The Manual provides:

> Any employee who has a complaint of sexual harassment at work by anyone, including supervisors, co-workers, or visitors, must bring the problem to the attention of their supervisor.  If the complaint involves someone in the employee's direct line of command, then the employee may bring it to the attention of the Administrative Officer.
>
> All complaints will be promptly handled.  The Company will take appropriate corrective action, including disciplinary measures, up to and including discharge, when justified, to remedy all violations of this policy.

(*See id.* Ex. B.)

DAI and Holdings clearly maintained a complaint procedure of which Biegel was well aware, but he did not take advantage of that procedure.  Biegel does not allege that he complained to anyone at DAI about the alleged Brazil Photographs, Sharapova Photograph or Brothel.  Moreover, even if his conversation with Shigeta about the Bathhouse occurred, which it did not, it came too long after the alleged incident to prevent DAI and Holdings from successfully asserting the Faragher/Ellerth defense.  *See Schmidt v. State Univ. of N.Y. at Stonybrook,* No. 02CV6083 (SLT), 2006 U.S. Dist. LEXIS 27663, at *44 (E.D.N.Y. May 5, 2006) (holding that the employee's more than one-year delay from the time of the alleged incident of harassment until lodging the complaint demonstrated that the employee failed to take advantage of the employer's complaint procedure).  Moreover, Biegel has not and cannot allege that Shigeta's alleged decision to terminate him was part of the alleged sexual harassment.

17

(Although not a matter for discussion on a motion to dismiss, Shigeta did not take part in the decision to terminate Biegel.)  Therefore, even if the Court finds that Biegel has stated a claim for sexual harassment (which he has not), his claim must nevertheless be dismissed as to Holdings and DAI.

## III.    BIEGEL  HAS  NOT  STATED  A  CLAIM  OF  RELIGIOUS DISCRIMINATION.

### A.    BIEGEL HAS FAILED TO STATE A CLAIM OF RELIGIOUS DISCRIMINATION UNDER SECTION 1981.

It is "settled that Section 1981 does *not* prohibit discrimination on the basis of . . . religion." *Anderson,* 156 F.3d at 170 (emphasis added) (citing *Runyon,* 427 U.S. at 167, 96 S. Ct. at 2593).  Therefore, insofar as Biegel has brought his claim of religious discrimination under Section 1981, that claim must be dismissed.

### B.    BIEGEL  HAS  NOT  STATED  A  CLAIM  FOR  RELIGIOUS DISCRIMINATION  UNDER  THE  NEW  YORK  STATE  OR  CITY HUMAN RIGHTS LAWS.

Like Biegel's sexual harassment claim, his allegation that DAI terminated him because he is Jewish is nothing more than a publicity stunt intended to damage Defendants' reputations.  This is evidenced by Biegel's failure to state in his Amended Complaint *a single fact* supporting an inference that his termination occurred even in part *because* he is Jewish.  To the contrary, the allegations set forth in the Amended Complaint actually result in an inference of *non-discrimination*.  In order to plead a *prima facie* case of discriminatory termination, Biegel must establish that his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of his membership in that class.  *See Zacharowicz v. Nassau Health Care Corp.*, 177 Fed. Appx. 152, 154 (2d Cir. 2006).

Biegel has failed to establish that the circumstances surrounding his termination result in an inference of discrimination.  The *only* allegation Biegel makes in the Amended

Complaint to support his claim that he was terminated *because* he is Jewish is his allegation that he was terminated *and* he is Jewish. (Cplt ¶ 104.) This allegation appears out of thin air at the very end of the Amended Complaint. Indeed, Biegel claims in the body of the Amended Complaint only that he was fired in retaliation for complaining about the alleged Bathhouse visit. (*See id.* ¶ 45.) This allegation completely undermines his claim that he was fired because he is Jewish.

In addition, Biegel does not allege a single comment, derogatory or otherwise, made by anyone at DAI, including Shigeta or Andree, to him or anyone else regarding Jewish employees. Similarly, he fails to allege that he or any other of DAI's numerous Jewish employees were treated any differently than their non-Jewish counterparts. Moreover, although Biegel states his belief that Rosen, his direct supervisor at DAI, was replaced by someone who is not Jewish, his purposeful failure to allege that *he* was replaced by someone who is not Jewish provides even further support that his termination was not discriminatory. (*See id.* ¶ 48.) In fact, Biegel does not even claim that Rosen was terminated *because* he was Jewish. Instead, Biegel asserts that Rosen was terminated because the Defendants were angry that he "did not move quickly enough to find [Biegel's] replacement." (*Id.* ¶ 46.)

The few references to Jewish employees in the Amended Complaint have absolutely no connection whatsoever to Plaintiff's claim of discrimination. (*See id.* ¶¶ 15, 19, 36, 39.) To the contrary, Biegel's allegations demonstrate that DAI has and continues to employ Jewish individuals in high positions of power and conduct business with Jewish individuals. Accordingly, Biegel has failed to establish a *prima facie* case of discriminatory termination, and his claim must therefore be dismissed. *See Valle v. Bally Total Fitness*, No. 01 Civ. 11614 (RCC), 2003 U.S. Dist. LEXIS 17093, at *7-8 (S.D.N.Y. Sept. 30, 2003) (holding that complaint

failed to meet the notice pleading requirement of Fed. R. Civ. P. 8 where plaintiff failed to incorporate any factual allegations that would indicate how his alleged status as a member of a protected class played a role in his employer's decision to terminate his employment); *Parker v. N.Y.C. Off-Track Betting*, No. 93 Civ. 0754 (BSJ), 1998 U.S. Dist. LEXIS 5467, at *7-9 (S.D.N.Y. 1998) (granting employer's motion to dismiss employee's discriminatory termination claim because he failed "to allege factual support for his conclusory assertion that his firing was discriminatory").

## IV.    BIEGEL HAS NOT STATED A CLAIM OF RETALIATION.

Biegel claims that he was terminated in retaliation for telling Shigeta that the trip to the Bathhouse offended him (a statement that Shigeta vigorously denies was ever made) and for threatening to speak to DAI's human resources department about the Bathhouse trip approximately *19 months after* that the trip occurred.  (Cplt. ¶¶ 36, 39, 40.)  His claim that he was fired in retaliation for this alleged conversation must be dismissed as a matter of law.

To state a claim for retaliation, a plaintiff must show that (1) he was engaged in a protected activity; (2) the employer was aware of his participation in the protected activity; (3) the employer took adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action.  *Carchidi v. Kenmore Dev.*, 123 Fed. Appx. 435, 436 (2d Cir. 2005); *Allen v. St. Cabrini Nursing Home, Inc.*, 198 F. Supp. 2d 442, 448 (S.D.N.Y. 2002), *aff'd*, 64 Fed. Appx. 836 (2d Cir. 2005).  Biegel has failed to sufficiently plead two of the four elements.

### A.    BIEGEL NEVER ENGAGED IN A PROTECTED ACTIVITY.

Even taking Biegel's allegation that he had the alleged conversation with Shigeta regarding the Bathhouse as true, that conversation does not constitute a "protected activity." First, the conversation cannot be construed as a complaint of harassment because it was nothing

more than a general comment that Biegel was uncomfortable. (Cplt. ¶ 40); *Schmidt,* 2006 U.S. Dist. LEXIS 27663, at *39 (noting that "'generalities' are not enough to put an employer on notice"). In fact, Biegel alleges that he had the conversation out of concern for another DAI employee as opposed to complaining for his own benefit. (Cplt. ¶¶ 39, 40.)

Second, Biegel has not pled any facts demonstrating that he had a good faith, reasonable belief that the trip to the Bathhouse was sexually harassing. *See Spadola v. New York City Transit Auth.*, 242 F. Supp. 2d 284, 291 (S.D.N.Y. 2003) (citing *Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 134 (2d Cir. 1999)). As described above, Biegel waited approximately *19 months* to complain about the Bathhouse, undermining any argument that he had a good faith belief that the trip there sexually harassed him. (Cplt. ¶¶ 36, 39, 40). Similarly, the fact that he merely threatened to complain to DAI's human resources department without ever doing so disproves his claim that he believed the Bathhouse was sexually harassing. (*See id.* ¶ 40.)

Moreover, the Bathhouse was not objectively offensive since no reasonable person would believe that the Bathhouse trip was sexually harassing. The Bathhouse — as described even by American-made tourist brochures — is a classy and clean traditional Japanese family venue attended by thousands of people every week. (*See* Fidoten Decl. ¶ 2, Ex. A.) Similar to an upscale locker room or sauna in an American golf club or gym, it is commonplace for people to walk around naked at the Bathhouse. Thus, Biegel's conversation with Shigeta about the Bathhouse was not a protected activity, and his retaliation claim on this ground alone must be dismissed. *See Clark County. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71, 121 S. Ct. 1508, 1509-11 (2001) (employee's belief that complaint of conduct violated Title VII not objectively reasonable where she alleged an isolated incident of mistreatment).

**B.    BIEGEL HAS NOT PLED A CAUSAL CONNECTION BETWEEN HIS ALLEGED COMPLAINT ABOUT THE BATHHOUSE AND HIS TERMINATION.**

Biegel also has not pled facts sufficient to establish the fourth element of his *prima facie* case of retaliation because the circumstances surrounding his termination do not lead to an inference of retaliation.  Biegel claims that his alleged conversation with Shigeta about the Bathhouse occurred before Shigeta was promoted to Chairman of Holdings on June 1, 2006. (Cplt. ¶ 44; Fidoten Decl. ¶ 1.)  Thus, taking the allegations in the Amended Complaint as true, the latest that conversation could have occurred is May 31, 2006.    Biegel's termination approximately five and a half months later on November 17, 2006 is too attenuated to create an inference of retaliation.  *See Breeden*, 532 U.S. at 273-74, 121 S. Ct. at 1511 (indicating even a three-month delay makes an adverse action too attenuated from the protected activity); *Garrett v. Garden City Hotel, Inc.*, No. 05 CV 0962 (JFB), 2007 U.S. Dist. LEXIS 31106, at *69-70 (E.D.N.Y. Apr. 19, 2007) ("district courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation").

Realizing that the time frame between his alleged complaint to Shigeta and his termination is fatal to his retaliation claim, Biegel attempts to create a claim by alleging his *belief* – without any factual support – that the decision to terminate him occurred in or around June 2006, approximately *6 months* before he actually was terminated.  (*See* Cplt. ¶¶ 44-47; Fidoten Decl. ¶ 1.)  However, like his claim of discriminatory termination, his claim of retaliation is wholly conclusory and therefore must be dismissed.  *See Kendricks v. Westhab, Inc.*, 40 Fed. Appx. 619, 620 (2d Cir. 2002) (affirming granting of motion to dismiss former employee's retaliation claim because his allegations of retaliation were vague).

22

**V.    BIEGEL'S CLAIMS AGAINST HOLDINGS MUST BE DISMISSED BECAUSE HOLDINGS NEVER WAS BIEGEL'S "EMPLOYER".**

All of Biegel's claims must be dismissed as against Holdings. Parent companies are not generally liable for the acts of their subsidiaries, and New York courts are reluctant to pierce the corporate veil of a parent company. *Bascomb v. Smith Barney, Inc.*, No. 96 Civ. 8747 (LAP), 1999 U.S. Dist. LEXIS 353, at *8 (S.D.N.Y. Jan. 15, 1999). "Courts only disregard the separate legal identities of the parent and subsidiary corporation if the parent intervenes in the subsidiary's management so thoroughly as to ignore the subsidiary's paraphernalia of incorporation, directors and officers." *Id.* (citing *Dempsey v. Intercontinental Hotel Corp.*, 126 A.D.2d 477, 478, 511 N.Y.S.2d 10, 11 (1st Dep't 1987)). In determining whether a defendant is actually the plaintiff's employer for the purposes of the New York State and City Human Rights Laws, courts consider the following elements:

> (1) whether the proposed employer had the power of the selection and engagement of the employee; (2) whether the proposed employer made the payment of salary or wages to the employee; (3) whether the proposed employer had the power of dismissal over the employee; and (4) whether the proposed employer had the power to control the employee's conduct.

*Robins v. Max Mara, U.S.A., Inc.*, 923 F. Supp. 460, 470 (S.D.N.Y. 1996).

"The most important consideration in this analysis is 'whether the alleged employer exercised control over the employee's conduct and the incidents of his employment.'" *Id.* (quoting *Alie v. NYNEX Corp.*, 158 F.R.D. 239, 246 (E.D.N.Y. 1994)). Biegel has alleged that he was an employee of DAI, *not* Holdings. (Cplt. ¶ 11.) Moreover, he has failed to allege that Holdings controlled any part of his employment at DAI or had any role in the alleged acts for which he has brought suit. Biegel merely alleges that Holdings delegated to Shigeta and Andree the authority to control his work environment. (*Id.* ¶ 74.) This general allegation is

insufficient to impose liability upon Holdings. Therefore, all of Biegel's claims insofar as they are asserted against Holdings must be dismissed.

## VI.    BIEGEL'S DEFAMATION CLAIM MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

"In an action for libel or slander, the particular words complained of shall be set forth in the complaint…." N.Y. C.P.L.R. § 3016(a). Indeed, the requirement that the defamatory words must be quoted verbatim is strictly enforced. *Erlitz v. Segal, Liling & Erlitz*, 142 A.D.2d 710, 712, 530 N.Y.S.2d 848, 850 (2d Dep't 1988) (*citing Gardner v. Alexander Rent-A-Car*, 28 A.D.2d 667, 280 N.Y.S.2d 595 (1st Dep't 1967)). Biegel's general allegation that "defendants have publicly accused plaintiff of fraud, and have also publicly attacked plaintiff's professional competence" (Cplt. ¶ 99), fails to meet this pleading standard. Specifically, Biegel does not set forth the "precise words allegedly giving rise to defamation and failed to allege in the [Amended C]omplaint the time, place and manner of publication." *See Khan v. Duane Reade,* 7 A.D.3d 311, 312, 776 N.Y.S.2d 281, 282 (1st Dep't 2004) (citations omitted)*; see also Goldberg v. Sitomer, Sitomer & Porges,* 97 A.D.2d 114, 117, 469 N.Y.S.2d 81, 83 (1st Dep't 1983) (dismissing a defamation claim for lack of particularity where the plaintiff alleged that he "'became the subject of numerous assertions' initiated by those defendants to the effect that he had been a knowing and culpable wrongdoer in . . . securities law violations"), *aff'd,* 63 N.Y.2d 831, 482 N.Y.S.2d 268 (1984). The only other factual allegation in Biegel's Amended Complaint in support of his claim for defamation is his claim that "[u]pon information and belief, defendants have made other false, defamatory statements regarding plaintiff." (Cplt. ¶ 101.)

Accordingly, Biegel's defamation claim should be dismissed because he failed to plead such a claim with the legally required particularity.

## CONCLUSION

For all the reasons stated above, Biegel's Amended Complaint should be dismissed with prejudice.

Dated: November 26, 2007

Respectfully submitted,

DAVIS & GILBERT LLP
1740 Broadway
New York, New York 10019

By: _____

Howard J. Rubin  (HR 1768)
Jennifer Tafet Klausner  (JK 1413)
Heath J. Rosenthal  (HR 9081)

Daniel S. Moretti (DM 6630)
Landman Corsi Ballaine & Ford P.C.
120 Broadway, 27th Floor
New York, New York 10271

Attorneys for Defendants