UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVE BIEGEL,

     Plaintiff,

     v.

DENTSU HOLDINGS USA, INC.,
DENTSU AMERICA, INC., TOYO
SHIGETA and TIMOTHY ANDREE,

     Defendants.

     Hon. Colleen McMahon, U.S.D.J.

     07 Civ. 9653 (CM) (THK)

---

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS THE AMENDED COMPLAINT**

---

Andrew Dwyer (AD-7793)
Of Counsel and
On the Brief

THE DWYER LAW FIRM, L.L.C.
17 Academy Street, Suite 1010
Newark, New Jersey 07102
(973) 242-3636
Attorneys for Plaintiff

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

RELEVANT PROCEDURAL AND FACTUAL BACKGROUND ............................2

ARGUMENT

    I.     DEFENDANTS' "MOTION TO DISMISS" IMPROPERLY
           GOES OUTSIDE THE PLEADINGS, AND INCORRECTLY
           APPLIES A HEIGHTENED PLEADING STANDARD TO
           PLAINTIFF'S CIVIL RIGHTS CLAIMS...............................................4

          A.    Defendants Have Violated Rule 12(b)(6), By Repeatedly
                Relying On Materials That Are Well Outside The Pleadings....................4

          B.    Even If Converted To A Summary Judgment Motion,
                Defendants' Motion Must Be Denied, Due To Several
                Disputed Material Facts, And The Complete Absence
                Of Any Discovery ...............................................................6

          C.    Defendants Also Incorrectly Apply A Heightened
                Pleading Standard To Plaintiff's Civil Rights Claims ................................7

    II.    PLAINTIFF HAS STATED A CLAIM THAT HE WAS FIRED
           BECAUSE HE IS A JEW, IN VIOLATION OF FEDERAL AND
            NEW YORK LAW .......................................................................10

          A.    Discrimination Against Jews Is Unlawful Under
                42 U.S.C. § 1981......................................................................10

          B.    Plaintiff Has Adequately Pled A Discrimination Claim,
                For Purposes Of This Motion To Dismiss ................................11

    III.   PLAINTIFF HAS STATED A CLAIM THAT HE WAS FIRED IN
           RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY,
            IN VIOLATION OF FEDERAL AND NEW YORK LAW .................................13

          A.    Plaintiff Engaged In Protected Activity .....................................13

          B.    Plaintiff Has Pled Causation Between His Protected
                Activity And His Firing ..........................................................16

IV.   PLAINTIFF HAS STATED A CLAIM FOR SEXUAL
      HARASSMENT ....................................................................................................17

      A.   The Conduct Alleged Is Sufficiently Severe To State
           A Claim For Sexual Harassment.................................................................17

      B.   Plaintiff's Sexual Harassment Claim Is Not Time
           Barred........................................................................................................20

      C.   Defendants Do Not Have A Valid Affirmative Defense
           Based On An Alleged Sexual Harassment Policy ......................................22

V.    PLAINTIFF HAS STATED CLAIMS FOR RETALIATION
      AND DEFAMATION, BASED ON DEFENDANTS' CONDUCT
      TAKEN IN REPRISAL FOR PLAINTIFF'S ORIGINAL
      COMPLAINT IN THIS ACTION .........................................................................23

VI.   PLAINTIFF HAS STATED CLAIMS AGAINST THE
      INDIVIDUAL AND CORPORATE DEFENDANTS ...........................................25

CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

Alie v. NYNEX Corp.,
    158 F.R.D. 239 (E.D.N.Y. 1994) ........................................................................................25

AMTRAK v. Morgan,
    536 U.S. 101, 122 S. Ct. 2061 (2002) ........................................................................ 20-21

Barnett v. Revere Smelting & Refining Corp.,
    67 F. Supp. 2d 378 (S.D.N.Y. 1999) ..................................................................................7

Baskerville v. Culligan International Co.,
    50 F.3d 428 (7th Cir. 1995) ...............................................................................................20

Birmingham v. Ogden,
    70 F. Supp. 2d 353 (S.D.N.Y. 1999) ................................................................................17

Blunt v. Aetna/US Healthcare,
    No. 04cv483, 2005 U.S. Dist. LEXIS 13199
    (D. Conn. June 30, 2005) .....................................................................................................5

Breeding v. Cendant Corp.,
    No. 01 Civ. 11563 (GEL), 2003 U.S. Dist. LEXIS 6558,
    91 Fair Empl. Prac. Cas. (BNA) 1353
    (S.D.N.Y. Apr. 10, 2003) ...................................................................................................19

Burlington Industries, Inc. v. Ellerth,
    524 U.S. 742, 118 S. Ct. 2257 (1998) .........................................................................22, 23

Burlington Northern& Santa Fe Ry. Co. v. White,
    __ U.S. __, 126 S. Ct. 2405 (2006) .............................................................................23, 24

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2d Cir. 2002) ............................................................................ 4-5, 6, 8, 17

Clark v. State,
    302 A.D.2d 942, 754 N.Y.S.2d 814 (4th Dep't 2003) ......................................................21

Clark County School District v. Breeden,
    532 U.S. 268, 121 S. Ct. 1508 (2001) ..............................................................................16

Coleman v. B.G. Sulzle, Inc.,
    402 F. Supp. 2d 403 (N.D.N.Y. 2005) .............................................................................21

Darboe v. Staples, Inc.,
    243 F. Supp. 2d 5 (S.D.N.Y. 2003) ................................................................13

Dixon v. Int'l Brotherhood of Police Officers,
    504 F.3d 73 (1st Cir. 2007)..............................................................................24

Dollinger v. State Ins. Fund,
    44 F. Supp. 2d 467 (N.D.N.Y. 1999)................................................................5

Donaire v. NME Hospital, Inc.,
    27 F.3d 507 (11th Cir. 1994) .........................................................................11

Ferraro v. Kellwood Co.,
    440 F.3d 96 (2d Cir. 2006)..............................................................................23

Fitzgerald v. Henderson,
    251 F.3d 345 (2d Cir. 2001)............................................................................21

Friedl v. City of New York,
    210 F.3d 79 (2d Cir. 2000)..........................................................................5, 10

Garvey v. Dickinson College,
    761 F. Supp. 1175 (M.D. Pa. 1991) ................................................................22

Hicks v. IBM,
    44 F. Supp. 2d 593 (S.D.N.Y. 1999)...........................................................8, 25

Hillig v. Rumsfeld,
    381 F.3d 1028 (10th Cir. 2004) ......................................................................24

Huaman v. American Airlines, Inc.,
    No. 00-CV-6336 (FB) (MDG), 2005 U.S. Dist. LEXIS 21777
    (E.D.N.Y. Sept. 29, 2005)..............................................................................21

Huffman v. City of Prairie Village,
    980 F. Supp. 1192 (D. Kan.1997)....................................................................20

Hutchinson v. Amateur Electronic Supply, Inc.,
    42 F.3d 1037 (7th Cir. 1994) ..........................................................................20

Iannone v. Frederic R. Harris, Inc.,
    941 F. Supp. 403 (S.D.N.Y. 1996) .............................................................15, 20

Jadoo v. City of New York,
    No. 95 CV 3540, 1997 U.S. Dist. LEXIS 14950
    (E.D.N.Y. Sept. 29, 1997)................................................................................5

James v. Runyon,
    843 F. Supp. 816 (N.D.N.Y. 1994)................................................................15

Jamieson v. Poughkeepsie City School District,
    195 F. Supp. 2d 457 (S.D.N.Y. 2002)...........................................................7

Jean-Gilles v. County of Rockland,
    195 F. Supp. 2d 528 (S.D.N.Y. 2002)..................................................... 16-17

Jute v. Hamilton Sundstrand Corp.,
    420 F.3d 166 (2d Cir. 2005)........................................................................24

Kantha v. Blue,
    262 F. Supp. 2d 90 (S.D.N.Y. 2003).........................................................17

Kato v. Ishihara,
    239 F. Supp. 2d 359 (S.D.N.Y. 2002).......................................................25

Kelly v. Schmidberger,
    806 F.2d 44 (2d Cir. 1986).........................................................................24

Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.,
    957 F.2d 59 (2d Cir. 1992).........................................................................15

LeBlanc-Sternberg v. Fletcher,
    781 F. Supp. 261 (S.D.N.Y. 1991) ...........................................................11

Leibovitz v. New York City Transit Authority,
    252 F.3d 179 (2d Cir. 2001)........................................................................20

Leonard F. v. Israel Discount Bank,
    199 F.3d 99 (2d Cir. 1999)...........................................................................5

Mack v. Otis Elevator Co.,
    326 F.3d 116 (2d Cir. 2003)........................................................................22

Mahmud v. Kaufmann,
    454 F. Supp. 2d 150 (S.D.N.Y. 2006).......................................................11

McIntosh v. Covenant House,
    No. 05 Civ. 9973 (CM), 2007 U.S. Dist. LEXIS 50257
    (S.D.N.Y. June 28, 2007)...........................................................................11

Messina v. Mazzeo,
    854 F. Supp. 116 (E.D.N.Y. 1994) .............................................................7

Moll v. Telesector Resources Group, Inc.,
        No. 04-CV-0805S, 2005 U.S. Dist. LEXIS 43605
        (W.D.N.Y. Sept. 29, 2005) ....................................................................................5

Mormol v. Costco Wholesale Corp.,
        364 F.3d 54 (2d Cir. 2004).............................................................................18, 19

National Life Ins. Co. v. Solomon,
        529 F.2d 59 (2d Cir. 1975)....................................................................................6

Onanuga v. Pfizer, Inc.,
        No. 03 Civ. 5405 (CM) (GAY), 2004 U.S. Dist. LEXIS 4823
        (S.D.N.Y. Mar. 16, 2004) ......................................................................................9

Pantchenko v. C.B. Dolge Co.,
        581 F.2d 1052 (2d Cir. 1978)...............................................................................24

Park v. Hyatt Corp.,
        436 F. Supp. 2d 60 (D.D.C. 2006) ................................................................ 11-12

Parker v. NYC OTB,
        No. 93 Civ. 0754 (BSJ), 1998 U.S. Dist. LEXIS 5467
        (S.D.N.Y. Apr. 17, 1998)......................................................................................13

Quantock v. Shares Marketing Services, Inc.,
        312 F.3d 899 (7th Cir. 2002) ...............................................................................19

Quinn v. Green Tree Credit Corp.,
        159 F.3d 759 (2d Cir. 1998).................................................................................17

Quinn v. Syracuse Model Neighborhood Corp.,
        613 F.2d 438 (2d Cir. 1980)...................................................................................6

Reed v. A.W. Lawrence & Co.,
        95 F.3d 1170 (2d Cir. 1996)........................................................................... 14-15

Robinson v. Shell Oil Co.,
        519 U.S. 337, 117 S. Ct. 843 (1997).............................................................. 23-24

Santos v. Costco Wholesale, Inc.,
        271 F. Supp. 2d 565 (S.D.N.Y. 2003)..................................................................17

Shaare Tefila Congregation v. Cobb,
        481 U.S. 615, 107 S. Ct. 2019 (1987)..................................................................10

Sier v. Jacobs Persinger & Parker,
        276 A.D.2d 401, 714 N.Y.S.2d 283 (1st Dep't 2000) ........................................21

Singer v. Denver School District,
    959 F. Supp. 1325 (D. Colo. 1997).........................................................................11

Smith v. Ouachita Technical College,
    337 F.3d 1079 (8th Cir. 2003) ...............................................................................11

Spadola v. New York City Transit Authority,
    242 F. Supp. 2d 284 (S.D.N.Y. 2003)....................................................................16

St. Francis College v. Al-Khazraji,
    481 U.S. 604, 107 S. Ct. 2022 (1987)....................................................................10

Sullivan v. Newburgh Enlarged School District,
    281 F. Supp. 2d 689 (S.D.N.Y. 2003)......................................................................7

Swierkiewicz v. Sorema, S.A.,
    534 U.S. 506, 122 S. Ct. 992 (2002)................................................................9-10, 11

Tarshis v. Riese Org.,
    211 F.3d 30 (2d Cir. 2000).....................................................................................13

Thomas v. iStar Financial, Inc.,
    438 F. Supp. 2d 348 (S.D.N.Y. 2006)....................................................................15

Tomka v. The Seiler Corp.,
    66 F.3d 1295 (2d Cir. 1995)..................................................................................23

Treglia v. Town of Manlius,
    313 F.3d 713 (2d Cir. 2002)..................................................................................17

Valle v. Bally Total Fitness,
    No. 01 Civ. 11614 (RCC) (KNF), 2003 U.S. Dist. LEXIS 10793
    (S.D.N.Y. Sept. 29, 2003).....................................................................................13

Waldron v. Rotzler,
    862 F. Supp. 763 (N.D.N.Y. 1994)........................................................................12

Weiss v. La Suisse,
    69 F. Supp. 2d 449 (S.D.N.Y. 1999)..................................................................10-11

Wheeler v. Natale,
    137 F. Supp. 2d 301 (S.D.N.Y. 2001)....................................................................7-8

Whidbee v. Garzarelli Food Specialties, Inc.,
    223 F.3d 62 (2d Cir. 2000).............................................................................19, 20, 25

Winters v. Meyer,
    442 F. Supp. 2d 82 (S.D.N.Y. 2006).......................................................................6

Yaba v. Roosevelt,
  961 F. Supp. 611 (S.D.N.Y. 1997) ...............................................................................19, 21

Yarde v. Good Samaritan Hospital,
  360 F. Supp. 2d 552 (S.D.N.Y. 2005)...............................................................................19

Young v. Town of Fallsburg,
  774 F. Supp. 205 (S.D.N.Y. 1991) ...................................................................................22

## STATUTES AND RULES

42 U.S.C. § 1981 ............................................................................................................. passim

Fed. R. Civ. P. 8(a)(2)......................................................................................................1, 9, 24

Fed. R. Civ. P. 12(b)(6)...................................................................................................... passim

Fed. R. Civ. P. 12(e) ..............................................................................................................10

Fed. R. Civ. P. 15(a)(2)...........................................................................................................10

Fed. R. Civ. P. 26(d)(1)............................................................................................................3

Fed. R. Civ. P. 26(f) ................................................................................................................3

New York State Human Rights Law,
  N.Y. Exec. Law §§ 290 et seq. ...........................................................................................3

  N.Y. Exec. Law § 296(6)....................................................................................................25

New York City Human Rights Law,
  N.Y.C. Admin. Code §§ 8-101 et seq. .................................................................................3

N.Y. C.P.L.R. 3016(a) ............................................................................................................24

## PRELIMINARY STATEMENT

Plaintiff Steve Biegel, by his attorneys, respectfully submits this Brief in opposition to defendants' "motion to dismiss." Defendants' motion should be denied in its entirety.

Although captioned as a motion to dismiss, in reality, defendants have disregarded the strictures of Rule 12(b)(6), and have filed a motion that relies heavily on materials defendants have submitted that go far beyond the pleadings. Defendants' hybrid motion is really one for summary judgment, except that it is made in a procedural context where plaintiff has been denied all discovery, as well as a fair chance to lay relevant evidence on the record. Even if this Court were to convert this to a summary judgment motion, the motion would still have to be denied. If plaintiff were given notice and a fair opportunity to respond to a summary judgment motion, even at this juncture, there would be disputed facts on almost every material issue.

Apart from their persistent failure to confine themselves to the four corners of the pleadings, defendants' most glaring error – on display throughout their Brief – is their belief that plaintiff must do something more than set out a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Contrary to defendants' approach, a civil rights plaintiff is not subject to some heightened pleading standard that requires him to proffer evidence or set forth the details of his claim. As long as the Amended Complaint puts defendants on notice of plaintiff's claims, and asserts valid causes of action, that is all that is required at this stage. Development of the factual bases for plaintiff's claims abides discovery.

Turning to plaintiff's particular claims, first, it is unlawful under both federal and New York law to fire an employee because he is a Jew. Defendants profess not to understand plaintiff's Section 1981 claim, but it has been established for over two decades that discrimination against Jews constitutes "race" discrimination under 42 U.S.C. § 1981. If plaintiff's allegations are accepted as true – as they must be on this motion under Rule 12(b)(6) – then he was fired in part because he is a Jew, which violates federal and New York law.

Plaintiff's retaliation claim is based on being fired in reprisal for a complaint he made about conduct he believed in good faith constituted sexual harassment. The Second Circuit has

specifically held that the precise type of complaint plaintiff made constitutes protected activity. Further, plaintiff easily shows causation between his protected activity and his firing, because (a) defendant Shigeta immediately threatened to fire plaintiff when he made the complaint, and (b) the decision to fire plaintiff was made almost immediately after he complained.

Plaintiff's sexual harassment claim is based on a series of incidents, some of which were so severe that individually they give rise to a claim. On this motion, plaintiff's version of these events – not defendants' version – must be accepted as true. Whether, for example, being coerced/duped into stripping off his clothes and parading naked in front of his boss constituted sexual harassment, is a disputed question that cannot be resolved as a matter of law at the pleadings stage. Because some of these incidents occurred within the limitations period, they are not time barred under a continuing violation doctrine. And defendants cannot dismiss plaintiff's claim based on the Faragher/Ellerth doctrine, because even if defendants had an effective sexual harassment policy (a disputed issue), plaintiff complained to his supervisors, and plaintiff's supervisor (who committed the harassment) fired plaintiff in retaliation for his complaint.

Plaintiff's Amended Complaint added further claims for retaliation and defamation, based on defamatory statements defendants made about plaintiff in retaliation for filing this lawsuit. Defendants ignore plaintiff's retaliation claim in this regard, but it is well established that post-termination retaliation against a former employee is unlawful.

Finally, defendants Shigeta and Andree are properly named because supervisors who participate in unlawful discrimination are held liable under both 42 U.S.C. § 1981 and New York law. Likewise, the parent corporate defendant, Dentsu Holdings USA, Inc., is properly named because of its control over the workplace, and its active involvement in plaintiff's termination.

## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

The Complaint, filed on October 31, 2007, asserted: (a) plaintiff was fired because he is a Jew; (b) plaintiff was fired in retaliation for a complaint of sexual harassment he made directly to and about his supervisor, defendant Shigeta; and (c) plaintiff was sexually harassed, in a series of incidents described in the Complaint. Complaint, ¶¶ 15, 18-50, 69-72, 92-95. The Complaint

asserted claims under 42 U.S.C. § 1981, the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq. ("NYHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq. ("NYCHRL"). Plaintiff named as defendants Dentsu Holdings USA, Inc., Dentsu America, Inc. (a subsidiary of Dentsu Holdings), Toyo Shigeta (the CEO of Dentsu Holdings) and Timothy Andree (the CEO of Dentsu America). As alleged in the Complaint, the defendants all directly participated in the actions taken against plaintiff.

Plaintiff's Complaint made specific reference to a charge of discrimination previously filed with the Equal Employment Opportunity Commission ("EEOC"), asserting related claims arising out the same events. Plaintiff's EEOC Charge elaborated on some of plaintiff's claims, particularly plaintiff's claim of discrimination. Complaint, ¶ 103; see Declaration of Andrew Dwyer, Exhibit A annexed thereto (Nov. 29, 2007) (hereinafter "Dwyer Decl.").

On November 7, 2007, this Court issued a scheduling Order and directed the parties to submit a proposed joint discovery plan. The parties have yet to hold a Rule 26(f) conference, and therefore all discovery is prohibited, pursuant to Rule 26(d)(1).

Following the filing of the Complaint, defendants made several statements publicly attacking plaintiff. In an article published in AdWeek on November 5, 2007, for example, statements were attributed to Dentsu and Andree, accusing plaintiff of committing fraud in connection with his work expenses, and asserting that plaintiff had exhibited poor performance as an employee. Dwyer Decl., Exhibit C. Before any response to the Complaint was filed, on November 20, 2007, plaintiff filed an Amended Complaint, which asserted that defendants had retaliated against plaintiff by making defamatory statements about plaintiff, which accused plaintiff of fraud and attacked his professional competence. In the Amended Complaint, plaintiff asserted these post-filing acts as constituting additional incidents of retaliation, and also defamation. Amended Complaint, ¶¶ 98-103. The Amended Complaint again made reference to an Amended Charge of Discrimination, that was filed with the EEOC, asserting related claims arising out of the same incidents Amended Complaint, ¶ 113; Dwyer Decl., Exhibit A.

Without filing any responsive pleading, and with discovery still barred by Rule 26(d)(1),

defendants filed a motion to dismiss the Amended Complaint in its entirety on November 26th. Although framed as a motion to dismiss, defendants also submitted a Declaration by Douglas Fidtoten, which made various allegations, and which attached three documents, none of which are referenced or mentioned anywhere in the Amended Complaint.

Plaintiff's claims are set out in his Amended Complaint, and in his Amended Charge of Discrimination, filed with the EEOC and specifically referenced in the Amended Complaint. Because defendants have gone outside the pleadings, in responding to this motion below, we will also address some of their factual assertions, by reference to additional materials we are submitting in opposition to the motion. Further explanation of the relevant facts, as they pertain to particular aspects of defendants' motion, is set forth below.

## ARGUMENT

I. **DEFENDANTS' "MOTION TO DISMISS" IMPROPERLY GOES OUTSIDE THE PLEADINGS, AND INCORRECTLY APPLIES A HEIGHTENED PLEADING STANDARD TO PLAINTIFF'S CIVIL RIGHTS CLAIMS**

A. **Defendants Have Violated Rule 12(b)(6), By Repeatedly Relying On Materials That Are Well Outside The Pleadings**

Defendants' first error is to rely on material outside the pleadings. They rely on this material, submitted with their motion, to argue that plaintiff did not suffer discrimination, Db19; to argue that plaintiff did not engage in protected activity, Db21; to argue that there is no causation for plaintiff's retaliation claim, Db22; to argue that plaintiff's claims are time barred, Db8; to argue that the harassment was not severe, Db14; and to argue that defendants have an affirmative defense based on a sexual harassment policy, Db17. In each case, defendants rely on material that is not only outside the pleadings, but that contradicts plaintiff's pleadings.

In so doing, defendants have deliberately misrepresented the holding in <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147 (2d Cir. 2002). Defendants suggest to this Court that <u>Chambers</u> stands for proposition that they may rely on the material they have supplied, even though it is not mentioned in the pleadings, nor relied upon by plaintiff. In reality, ***immediately after the language quoted by defendants***, <u>see</u> Db7, the Second Circuit in <u>Chambers</u> said:

4

> Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; *mere notice or possession is not enough*.

Chambers, 282 F.3d at 153 (emphasis added).

Thus, on a Rule 12(b)(6) motion, this Court *should* consider plaintiff's Amended EEOC Charge, Dwyer Decl., Exhibit A, because it is specifically referenced in the Amended Complaint, ¶ 113. For this reason, courts have repeatedly considered EEOC charges of discrimination on Rule 12(b)(6) motions. See, e.g., Moll v. Telesector Resources Group, Inc., No. 04-CV-0805S, 2005 U.S. Dist. LEXIS 43605, at *9-*10 (W.D.N.Y. Sept. 29, 2005); Jadoo v. City of New York, No. 95 CV 3540, 1997 U.S. Dist. LEXIS 14950, at *6 (E.D.N.Y. Sept. 29, 1997); Dollinger v. State Ins. Fund, 44 F. Supp. 2d 467, 472 (N.D.N.Y. 1999); Blunt v. Aetna/US Healthcare, No. 04cv483, 2005 U.S. Dist. LEXIS 13199, at *4-*5 (D. Conn. June 30, 2005).

By contrast, the Fidoten Declaration, and the materials attached to it, are not referenced nor relied upon by plaintiff at any point, and thus must be excluded entirely on this motion. Even worse, of course, are some of the assertions in defendants' Brief, which are not supported by *anything*. See, e.g., Db6 (asserting plaintiff was not replaced); Db20 (asserting plaintiff did not complain to Shigeta about the bathhouse incident in May, 2006); Db18 (asserting Shigeta did not participate in the decision to fire plaintiff). In Chambers, the Court reversed an order of dismissal, *precisely* because the trial court had erroneously relied on certain documents that were submitted by defendants, but that had not been referenced or relied upon by plaintiffs.

> Consideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of *Federal Rule of Civil Procedure 8(a)(2)*, which requires only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." . . . . Also, when a district court considers certain extra-pleading materials and excludes others, it risks depriving the parties of a fair adjudication of the claims by examining an incomplete record.

Chambers, 282 F.3d at 154-55. The Second Circuit has repeatedly reversed trial courts that granted 12(b)(6) motions *solely* for committing the error of considering materials outside the pleadings, regardless of whether the error was harmless. Friedl v. City of New York, 210 F.3d 79, 83-84 (2d Cir. 2000); Leonard F. v. Israel Discount Bank, 199 F.3d 99, 107 (2d Cir. 1999).

Thus, if this Court decides defendants' motion as a Rule 12(b)(6) motion, it must exclude

every factual assertion made by defendants that is not found in the Amended Complaint and/or the Amended EEOC Charge – which means the bulk of the factual underpinnings for defendants' motion must be rejected. Otherwise, any decision granting defendants' motion will be reversed.

**B.    Even If Converted To A Summary Judgment Motion, Defendants' Motion Must Be Denied, Due To Several Disputed Material Facts, And The Complete Absence Of Any Discovery**

As an alternative to excluding the bulk of defendants' material, this Court may convert the motion to one for summary judgment. In that case, however, this Court would be "obligated" to "give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56. . . . This conversion requirement is 'strictly enforced' whenever a district court considers extra-pleading material in ruling on a motion to dismiss." Chambers, 282 F.3d at 154. See also Winters v. Meyer, 442 F. Supp. 2d 82, 86 (S.D.N.Y. 2006) (the court is "under a clear mandate" before converting a motion to summary judgment to "expand discovery to allow further evidence"). We oppose converting this motion to a summary judgment motion, however, for two reasons. First, as Chambers notes, this Court is "obligated" to allow the parties to conduct discovery anyway. Given the nature of the claims, a fair opportunity to conduct discovery will mean requiring defendants to plead in response to the Amended Complaint, and affording the parties some months to exchange interrogatories and document demands, and take depositions. Second, on the present record any conversion will be futile, because disputed issues of material fact preclude granting summary judgment.

While a summary judgment motion can be made at any time, as a general rule it is improper when the non-movant has had no opportunity to conduct discovery. "Since summary judgment is a 'drastic device,' . . . it should not be granted when there are major factual contentions in dispute. . . . This is particularly so when, as here, one party has yet to exercise its opportunities for pretrial discovery." National Life Ins. Co. v. Solomon, 529 F.2d 59, 61 (2d Cir. 1975); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980) (reversing a trial court that had converted a 12(b)(6) motion to one for summary judgment, while discovery was stayed). Depositions, in particular, are a critical tool to insure that a party has a

6

fair opportunity to present evidence in support of its claims. In <u>Messina v. Mazzeo</u>, 854 F. Supp. 116, 141-42 (E.D.N.Y. 1994), for example, where the medical treatment of the plaintiff was at issue, the Court denied summary judgment where no depositions had been taken, even though plaintiff's complete medical records had already been produced. In this case, not only has plaintiff had no opportunity to depose anyone, he has had no opportunity to propound interrogatories or obtain documents regarding even the most basic issues (such as his personnel file, why he was fired, documents related to the termination decision and the involvement of the individual defendants, the termination of the other Jews who were eliminated from the Dentsu creative department, communications between Shigeta and Andree regarding plaintiff, the events giving rise to the harassment claim, and defendants' communications with <u>AdWeek</u> – and others – about plaintiff).

Apart from the lack of discovery, summary judgment is simply inappropriate when there are disputed issues of fact, and as we detail below, there are critical disputes on almost every material issue in this case. Further, as this Court well knows:

> The Second Circuit has instructed that district courts must be "especially cautious" in deciding whether to grant the "drastic remedy" of summary judgment in a discrimination case, "because the employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination."  . . . Because discriminatory acts are often "hidden under a veil of self-declared innocence," a discrimination victim is "seldom able to prove his or her claim by direct evidence and is usually constrained to rely upon the commutative weight of circumstantial evidence. . . ."

<u>Sullivan v. Newburgh Enlarged School District</u>, 281 F. Supp. 2d 689, 701-02 (S.D.N.Y. 2003); <u>Barnett v. Revere Smelting & Refining Corp.</u>, 67 F. Supp. 2d 378, 392 (S.D.N.Y. 1999); <u>Jamieson v. Poughkeepsie City School District</u>, 195 F. Supp. 2d 457, 466, 468 (S.D.N.Y. 2002). Below, we provide this Court with several reasons why – even if this motion were converted to one for summary judgment and discovery was taken – it would have to be denied nonetheless.

### C. Defendants Also Incorrectly Apply A Heightened Pleading Standard To Plaintiff's Civil Rights Claims

But, of course, this is *not* a summary judgment motion, but rather a 12(b)(6) motion to dismiss. Defendants largely ignore the applicable standard, but as this Court knows:

The standard of review on a motion to dismiss is heavily weighted in favor of the

> plaintiff. The Court is required to read a complaint generously, drawing all reasonable inferences from the complaint's allegations. . . . "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true." . . . The Court must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief."

Wheeler v. Natale, 137 F. Supp. 2d 301, 303 (S.D.N.Y. 2001); Chambers, 282 F.3d at 152; Hicks v. IBM, 44 F. Supp. 2d 593, 595 (S.D.N.Y. 1999). Defendants, however, flip this standard on its head. First, they repeatedly challenge the allegations in the complaint as being untrue or unsupported, and thus contend that the Court should *not* accept the allegations as true. Many of these challenges are based on nothing more than statements made by counsel in defendants' Brief. For example, notwithstanding the Amended Complaint, ¶ 104, defendants assert plaintiff was not fired for being a Jew, and that plaintiff's contrary allegation is a "publicity stunt." Db18. Defendants insist that the decision to fire plaintiff was made in November, 2006, Db22, even though plaintiff alleges it was made in June, 2006, Amended Complaint, ¶¶ 45-46. Defendants assure this Court that plaintiff's description of the bathhouse incident, Amended Complaint, ¶¶ 36-38, is a lie, and that their version of this event is the truth. Db14. Even though plaintiff repeatedly alleges that the incidents of sexual harassment were offensive, humiliating, outrageous, degrading, and a source of profound emotional distress, including loss of sleep, anxiety, stress, chest pains, difficulty concentrating and disruption in plaintiff's family and social relationships, Amended Complaint, ¶¶ 24, 27, 33, 38, 39, 40, 52, 53, 56, 57 and 64, defendants tell this Court to disregard these allegations and find – based on their say so – that plaintiff was not offended by defendants' actions. Db13. Even though plaintiff specifically alleges the involvement of Dentsu Holdings in his termination, Amended Complaint, ¶¶ 44-45, 74, defendants state this allegation is false. Db23. Defendants take this stance, because they cannot prevail on any aspect of their motion unless plaintiff's allegations are rejected as untrue.

More insidiously, instead of reading the Amended Complaint "generously," and drawing "all reasonable inferences" in plaintiff's favor, defendants take the opposite tack, and draw every possible inference *against* plaintiff. Thus, the fact that Jews were often also subjected to the same degrading experiences and discrimination as plaintiff, Amended Complaint, ¶¶ 19, 28, 36,

38, 39-40, 47-48, is cited as proof that Dentsu hired or worked with Jews, and thus did *not* discriminate. Db18-Db19. But see Point II.B infra. Likewise, the fact that plaintiff alleges he complained about the bathhouse incident to Shigeta just before the decision was made to fire him, Amended Complaint, ¶ 40, is repeatedly cited as "proof" that plaintiff never complained at any other time about any other incident of harassment. Db2, Db3, Db7, Db17. But see Point IV.C infra. And the fact that plaintiff alleges he did his job well, Amended Complaint, ¶ 17, is cited again and again as conclusive evidence that plaintiff could not possibly have experienced the harassment as offensive. Db3, Db14, Db15. But see Point IV.A infra.

Defendants' critical error is their belief that to avoid a motion to dismiss, plaintiff must proffer evidence or describe details that make the allegations of the complaint plausible. This virus infects the entire body of defendants' argument. But at this stage plaintiff "is not required to establish or prove anything, rather [he] must only allege the requisite elements of a claim. This is not the proper time to assert and weigh evidence, there will be time for that during and after discovery." Onanuga v. Pfizer, Inc., No. 03 Civ. 5405 (CM) (GAY), 2004 U.S. Dist. LEXIS 4823, at *8-*9 (S.D.N.Y. Mar. 16, 2004). "Thus, no matter how improbable the facts alleged are, they must be accepted as true for purposes of the motion." Id. at *8.

In civil rights cases, the Supreme Court has specifically rejected any heightened pleading requirement. In Swierkiewicz v. Sorema, S.A., 534 U.S. 506, 122 S. Ct. 992 (2002), the Court overturned what had been the Second Circuit's "settled practice" to require detailed pleadings in discrimination cases. The Swierkiewicz trial court did exactly what defendants want this Court to do, namely, it dismissed the complaint because it did "not adequately allege[] circumstances that support an inference of discrimination." Id., 534 U.S. at 509, 122 S. Ct. at 996. On appeal, however, the Supreme Court reversed and held that a complaint in an employment discrimination case need not "contain specific facts establishing a prima facie case of discrimination . . . ." Id., 534 U.S. at 509, 122 S. Ct. at 995. Instead, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. (quoting Fed. R. Civ. P. 8(a)(2)). Holding that no greater "particularity" is required for discrimination claims, id., 534

9

U.S. at 511, 122 S. Ct. at 997, the Court explained the limited role of notice pleading:

> This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. . . . "The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court."

Id., 534 U.S. at 512-13, 122 S. Ct. at 998. Furthermore, the Court emphasized that if there is a genuine failure of the pleadings to give notice of the claims, then the better course is for the defendants to move for a more definite statement under Rule 12(e). Id., 534 U.S. at 514, 122 S. Ct. at 998. The Court emphasized that the pleading stage should not become a game of "gotcha."

> The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

Id., 534 U.S. at 514, 122 S. Ct. at 999.[1]  Indeed, the Court reinstated a discrimination complaint no more detailed than the one at issue here, and specifically *rejected* the employer's argument that "allowing lawsuits based on conclusory allegations of discrimination to go forward will burden the courts and encourage disgruntled employees to bring unsubstantiated suits." Id.

## II.    PLAINTIFF HAS STATED A CLAIM THAT HE WAS FIRED BECAUSE HE IS A JEW, IN VIOLATION OF FEDERAL AND NEW YORK LAW

### A.    Discrimination Against Jews Is Unlawful Under 42 U.S.C. § 1981

Defendants agree that firing an employee because he is a Jew violates the NYHRL and the NYCHRL, but claim it does not violate 42 U.S.C. § 1981, which does not apply to "religious" discrimination. Db18. But 20 years ago the Supreme Court held that discrimination against Jews violates § 1981, because the legislative history shows that Jews "were among the peoples then considered to be distinct races and hence within the protection of the statute." Shaare Tefila Congregation v. Cobb, 481 U.S. 615, 617-18, 107 S. Ct. 2019, 2022 (1987); St. Francis College v. Al-Khazraji, 481 U.S. 604, 611-13, 107 S. Ct. 2022, 2027-28 (1987); Weiss v.

---

[1] We submit that the Amended Complaint gives defendants adequate notice of the claims. However, to the extent that this Court concludes there is any defect in the pleading, the correct course at this early stage is to permit an amended pleading to correct the purported defect. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "In general, district courts should not deny leave unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility." Friedl, 210 F.3d at 87.

La Suisse, 69 F. Supp. 2d 449, 460 (S.D.N.Y. 1999). Even if a claim *could* be interpreted as asserting "religious" discrimination, it still states a claim for "race" discrimination under Section 1981. "Because Jewish culture, ancestry, and ethnic identity are intricately bound up with Judaic religious beliefs, racial and religious discrimination against Jews cannot be as easily distinguished as defendants would have it. . . . Jews are entitled to the protections of §§ 1981 and 1982 because Jews were considered to be a separate race in 1870 when those statutes became law. . . . We need not inquire any further." LeBlanc-Sternberg v. Fletcher, 781 F. Supp. 261, 267-68 (S.D.N.Y. 1991); Singer v. Denver School District, 959 F. Supp. 1325, 1326-27, 1331 (D. Colo. 1997) (upholding § 1981 claim for Hispanic who converted to Judaism; "Defendants are not entitled to judgment on the basis that he is claiming religious discrimination"). Because plaintiff claims he was fired for being a Jew, he asserts a valid claim under 42 U.S.C. § 1981.

**B.     Plaintiff Has Adequately Pled A Discrimination Claim, For Purposes Of This Motion To Dismiss**

Nonetheless, defendants argue that plaintiff has not adequately pled facts that would support an inference of discrimination. Db18-Db19. But as this Court held in a recent case, "Defendants' argument . . . fails because facts that would support a finding of discriminatory intent need not be alleged at pleading." McIntosh v. Covenant House, No. 05 Civ. 9973 (CM), 2007 U.S. Dist. LEXIS 50257, at *15 (S.D.N.Y. June 28, 2007). Courts have repeatedly held in discrimination cases that the barest pleadings satisfy the liberal standards under the federal rules. Swierkiewicz, 534 U.S. at 514, 122 S. Ct. at 999; Smith v. Ouachita Technical College, 337 F.3d 1079, 1080 (8th Cir. 2003) (§ 1981 claim that alleged plaintiff was "treated adversely and different than her white and male counterparts" and was denied promotions "on account of her race and sex," sufficed); Donaire v. NME Hospital, Inc., 27 F.3d 507, 509 (11th Cir. 1994) ("Plaintiff's allegation that he or she was subjected to intentional discrimination because of his or her 'ancestry or ethnic characteristics' satisfies the pleading requirements of section 1981"); Mahmud v. Kaufmann, 454 F. Supp. 2d 150, 158 (S.D.N.Y. 2006) (plaintiff's allegation that "defendants were racially motivated in 'thwarting her effort to contract'" was "sufficient to plead a claim under § 1981"); Park v. Hyatt Corp., 436 F. Supp. 2d 60, 66 (D.D.C. 2006) (alleging

plaintiffs were denied accommodations "because of plaintiffs' race" stated § 1981 claim, even though plaintiffs did *not* allege they were treated differently than other patrons); Waldron v. Rotzler, 862 F. Supp. 763, 769 (N.D.N.Y. 1994) (stating "that plaintiff is a Black American and has been discriminated against because of his status as a Black American" is "sufficient to state a selective enforcement claim under § 1981").

The Amended Complaint and the Amended EEOC Charge referenced therein (***both*** of which should be considered on this motion to dismiss, see supra at 5), allege that plaintiff was fired, in part, because he is a Jew. Amended Complaint, ¶ 104. Further, plaintiff and other Jews were subjected to a series of humiliating and degrading experiences by the same supervisor, Shigeta, who participated in plaintiff's firing. Id., ¶¶ 19, 24, 26-28, 36-38. When plaintiff complained and attempted to protect another Jew from being subjected to a similar spectacle, Shigeta threatened to fire plaintiff, and immediately followed up this threat by firing him. Id., ¶¶ 39-41, 45. Shigeta and Andree fired plaintiff and another Jew, Ron Rosen, on the same day. Id., ¶ 47. As alleged in the Amended Charge, both plaintiff and Rosen were replaced by a Gentile, Mike Wilson. Amended Charge, ¶ 44. Further, while once one-half of Dentsu's creative department was filled by Jews, within one year plaintiff, Rosen, Neal Gomberg and all the other Jews in the department were eliminated, and none of them were replaced by Jews. Amended Charge, ¶¶ 45-47, 49. See also Declaration of Steve Biegel, ¶¶ 18-21 (Nov. 30, 2007) (hereinafter "Biegel Decl."). Incredibly, defendants refer to Gomberg as evidence that they do not discriminate against Jews, Db6, *but fail to tell the Court that they have also fired Gomberg*. Amended Charge, ¶ 48; Biegel Decl., ¶ 22.

Likewise, defendants raise Douglas Fidoten, the putative President of Dentsu America, as proof that they employ Jews "in high positions of power." Db3. However, we submit that discovery will show that *defendants have openly discussed firing Mr. Fidoten*. Further, even as he remains at Dentsu while this suit is pending, we submit discovery will show that he has been stripped of his powers, and his Gentile subordinate (Mike Wilson) and his Gentile boss (Andree) are actually making the decisions running the agency behind Mr. Fidoten's back, even to the

point of reassigning Mr. Fidoten's responsibilities. We submit discovery will show Mr. Fidoten is a mere fig leaf, to hide the fact that in one year Dentsu's Gentile managers have eliminated every Jew in the creative department. Biegel Decl., ¶¶ 24-30 and Exhibit C. Of course, we raise this point as an example, not because Mr. Fidoten's position should even be considered on this motion to dismiss, but to indicate that if this Court were to convert this to a summary judgment motion and allow discovery, the motion would be denied anyway.

This is ample to sustain plaintiff's discrimination claim. The mere fact that plaintiff and Rosen were replaced by a non-Jew suffices to establish an inference of discrimination. Tarshis v. Riese Org, 211 F.3d 30, 36 (2d Cir. 2000); Darboe v. Staples, Inc., 243 F. Supp. 2d 5, 11 (S.D.N.Y. 2003). Defendants' motion to dismiss plaintiff's discrimination claim is without legal foundation, and should be denied.[2]

## III. PLAINTIFF HAS STATED A CLAIM THAT HE WAS FIRED IN RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY, IN VIOLATION OF FEDERAL AND NEW YORK LAW

### A. Plaintiff Engaged In Protected Activity

Defendants argue that plaintiff's retaliation claim should be dismissed, because notwithstanding the specific allegations in the Amended Complaint, defendants assert that plaintiff did not engage in protected activity. Defendants argue that plaintiff's complaint to Shigeta was too informal to constitute a complaint of harassment. Defendants further contend that plaintiff could not have had a reasonable good faith belief that he was complaining about sexual harassment, because the bathhouse incident was not, in defendants' view, capable of being seen as an incident of harassment. Db20-Db21.

The Amended Complaint alleges that Shigeta took plaintiff and other employees to a bathhouse, without telling them where they were going. Amended Complaint, ¶ 37. When they arrived, Shigeta commanded plaintiff to take a bath with him, and when plaintiff demurred,

[2] Defendants cite only two unpublished decisions in support of their position. Db19-Db20. Valle v. Bally Total Fitness, No. 01 Civ. 11614 (RCC) (KNF), 2003 U.S. Dist. LEXIS 10793, at *8 (S.D.N.Y. Sept. 29, 2003), involved a complaint that failed to allege how – if at all – race, gender, age or national origin played a role in the firing. Parker v. NYC OTB, No. 93 Civ. 0754 (BSJ), 1998 U.S. Dist. LEXIS 5467, at *7 (S.D.N.Y. Apr. 17, 1998), involved a complaint that failed to allege plaintiff's race, much less whether it played a role in his firing.

13

Shigeta commanded, "yes, you will," and ordered plaintiff to "get naked!" Out of fear of retaliation, plaintiff complied, and was thus forced/duped to parade naked in front of Shigeta, and to climb naked into a bath with Shigeta, who visibly enjoyed subjecting plaintiff to this "humiliating spectacle." Plaintiff was offended and humiliated by this "sexually degrading experience imposed on him as a condition of his employment." Amended Complaint, ¶ 38.

When plaintiff learned that Shigeta was taking Neal Gomberg on a similar trip to Japan, he became concerned that Shigeta would subject Gomberg "to a similarly sexually humiliating and degrading experience." Amended Complaint, ¶ 39. Therefore, plaintiff told Shigeta not to take Gomberg to the bathhouse, explaining "how humiliated he was by that experience," and that "he had almost complained to human resources about the incident, and in particular about defendant Shigeta's conduct in forcing plaintiff to parade about naked in front of him." Id. ¶ 40.

Defendants' belief that this does not constitute protected activity is defeated by Reed v. A.W. Lawrence & Co., 95 F.3d 1170 (2d Cir. 1996). In Reed, a co-worker on the phone said to the plaintiff: "Joanne, if you think my pecker is getting in the way." Id. at 1175 (the comment ended in mid-sentence because plaintiff hung up the phone). The plaintiff did *not* make a complaint, formal or otherwise, about this single comment. Rather, she merely discussed the comment with a "personal friend" who was a vice president at the company. And though the friend told plaintiff to report the matter to personnel, she did not do so, because of fear of retaliation. The friend, not plaintiff, then told the personnel director. Id.

Rejecting the very argument defendants make here, the Court held this informal discussion with a friend about a single "vulgar comment" by a co-worker constituted protected activity for a retaliation claim. The Court noted that plaintiff was not required to show that the single comment constituted sexual harassment, but only that she had a good faith, reasonable belief that the comment was sexual harassment. Reed, 95 F.3d at 1178. The Court held that this presented a jury question, that is, the plaintiff could have "reasonably and in good faith believed, at the time of her complaint, that she was the victim of a 'hostile work environment.'" Id. at 1179. Significantly, in reaching this conclusion, the Court also considered other incidents

plaintiff alleged: that a different co-worker accused plaintiff of "acting like a bitch in heat"; that the co-worker who made the "pecker" comment also told plaintiff to type up a report; and that plaintiff believed she was not getting credit for her work. Id. The Court held that these other allegations had to be included in determining whether plaintiff engaged in protected activity, *even though she never complained about them, and only raised the one "vulgar comment" with her friend.* Id. This means, of course, that in evaluating plaintiff's complaint to Shigeta, the Court also must consider the other alleged incidents of harassment, including when Shigeta forced/duped plaintiff into going to a brothel, and tried to force him to have sex with a prostitute.

It is ludicrous to argue plaintiff's complaint to Shigeta, in which he threatened to report Shigeta to human resources (and to which Shigeta responded by threatening to fire plaintiff) is less of a "complaint" than the informal discussion the plaintiff in Reed had with her friend. See also Kotcher v. Rosa & Sullivan Appliance Ctr., Inc., 957 F.2d 59, 65 (2d Cir. 1992) (informal complaints to supervisors can be protected activity). It is even more absurd to think that the conduct at issue in Reed (a co-worker's single vulgar comment) could be viewed as sexual harassment, but being forced to strip naked by one's boss could never be so viewed. Reed is not an isolated decision. Iannone v. Frederic R. Harris, Inc., 941 F. Supp. 403, 408-09, 410-11 (S.D.N.Y. 1996) (plaintiff engaged in protected activity when she told her boss she was "uncomfortable" with and did not want to use in a presentation a picture he had selected, which showed "the face and bare shoulder of a woman who appears to be removing a jacket," because plaintiff could have had a reasonable, good faith belief that requiring her to include the picture in the presentation constituted sexual harassment); Thomas v. iStar Financial, Inc., 438 F. Supp. 2d 348, 356, 365 (S.D.N.Y. 2006) (employee engaged in protected activity when he complained that a manager had said his daughter looked like a "black dot" in a company photo; that the same manager had said he knew what it was like to be "raised in the streets"; and that a co-worker had called him a "nigger"); James v. Runyon, 843 F. Supp. 816, 818, 825 (N.D.N.Y. 1994) (complaining about a co-worker's single "crude and vulgar comment" was protected activity).

Defendants have no contrary authority. First, the cases they cite for their argument all

involve summary judgment motions or post-trial motions; none involve motions to dismiss. Db20-Db21. Second, their cases are clearly distinguishable. <u>Clark County School District v. Breeden</u>, 532 U.S. 268, 269, 271, 121 S. Ct. 1508, 1509, 1510 (2001) involved reading a single comment by an *applicant* for employment ("making love to you is like making love to the Grand Canyon"), about which two employees "chuckled," and plaintiff agreed the comment "did not bother or upset her." <u>Spadola v. New York City Transit Authority</u>, 242 F. Supp. 2d 284, 286 (S.D.N.Y. 2003) involved a single comment by another employee, who told the plaintiff, "Honey, sweetie, dear, come back." Obviously, that is a far cry from plaintiff threatening to report Shigeta for "forcing plaintiff to parade about naked in front of [Shigeta]." Amended Complaint, ¶ 40. Under <u>Reed</u>'s clear authority, plaintiff engaged in protected activity.

### B.   Plaintiff Has Pled Causation Between His Protected Activity And His Firing

Defendants also argue that plaintiff cannot show a causal connection between his complaint to Shigeta in late May, 2006, and his termination, because plaintiff was not fired until November, 2006. Defendants argue that this is a five-and-a-half month delay, and thus precludes finding causation. Db22. Plaintiff specifically alleges that the *decision* to fire him was made almost immediately, in June, 2006, but was delayed as defendants searched for a replacement. Amended Complaint, ¶¶ 45-46. Defendants insist this allegation, although set forth in some detail in the Amended Complaint, is "conclusory" and should be "dismissed." Db22.

Defendants' argument ignores plaintiff's specific allegation that Shigeta threatened to fire plaintiff immediately upon plaintiff's complaint. This specific retaliatory threat, and Shigeta's evident anger at plaintiff for his complaint, are described in detail in the Amended Complaint, ¶¶ 41-43. Such direct evidence of retaliatory motive makes any dispute about temporal proximity irrelevant. In <u>Jean-Gilles v. County of Rockland</u>, 195 F. Supp. 2d 528, 534 (S.D.N.Y. 2002), this Court denied summary judgment on a retaliation claim, notwithstanding a gap of over a year, given "defendants' documented displeasure" with plaintiff's protected activity. It was possible defendants even after such a long delay "still harbored resentment . . . . Whether in fact defendants actually seized on the occasion [a year later] to retaliate against him . . . is . . .still an

open question." Moreover, as this Court has recognized, evidence such as plaintiff's allegation that Shigeta shunned him after his complaint, Amended Complaint, ¶ 43, is further proof of causation. <u>Birmingham v. Ogden</u>, 70 F. Supp. 2d 353, 367-68 (S.D.N.Y. 1999).

However, defendants are also wrong on temporal proximity. Ron Rosen has confirmed in a sworn statement that he was told in the summer of 2006 that the decision to fire plaintiff had already been made. Dwyer Decl., Exhibit B. Thus, the decision to fire plaintiff was made within a month or two (at most) of plaintiff's complaint to Shigeta. <u>See also</u> Biegel Decl., ¶¶ 15-17 and Exhibit B. An adverse employment decision within a month or two of protected activity – without any direct evidence of retaliatory intent -- is enough to establish causation. <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 769 (2d Cir. 1998) (firing within two months of internal complaint established causation); <u>Treglia v. Town of Manlius</u>, 313 F.3d 713, 720 (2d Cir. 2002) ("a few months"); <u>Santos v. Costco Wholesale, Inc.</u>, 271 F. Supp. 2d 565, 575 (S.D.N.Y. 2003) (three months); <u>Kantha v. Blue</u>, 262 F. Supp. 2d 90, 103 (S.D.N.Y. 2003) ("eight months separating a plaintiff's complaint and the retaliatory action can support a causal relationship"). Plainly, the direct evidence of retaliatory animus and the tight temporal proximity combined are enough to establish causation in this case, especially on a motion to dismiss. <u>Kantha</u>, 262 F. Supp. 2d at 103-04. None of the cases defendants cite are to the contrary. <u>See</u> Db22.

Of course, this illustrates how improper defendants' motion is overall. If we were unable to obtain Rosen's declaration pre-litigation, defendants would be arguing (however dishonestly) that we cannot plead "specific facts" to show the firing decision occurred in June, rather than November. This is precisely why a motion to dismiss should be denied, unless it would be impossible for plaintiff to prove facts that would state a claim. <u>Chambers</u>, 282 F.3d at 152.

## IV.    PLAINTIFF HAS STATED A CLAIM FOR SEXUAL HARASSMENT

### A.    The Conduct Alleged Is Sufficiently Severe To State A Claim For Sexual Harassment

Whether plaintiff has stated a claim for sexual harassment cannot be resolved on this 12(b)(6) motion. Significantly, every single case cited by defendants on this issue involved a summary judgment motion or a post-trial motion. No case they cite involved dismissing a sexual

harassment claim on a 12(b)(6) motion because the alleged acts were not sufficiently severe or pervasive. See Db8-Db18. We repeat: *defendants have not cited even one case that dismissed sexual harassment claims on a 12(b)(6) motion because they were not severe or pervasive.*

Because this Court cannot say that it would be impossible for plaintiff to prove any universe of facts that would sustain his claim, defendants' motion must be denied. Plaintiff alleges a series of harassing incidents perpetrated by his boss, the agency head, Toyo Shigeta. Shigeta forced plaintiff into going to a brothel, and then tried to force plaintiff to have sex with a prostitute. Amended Complaint, ¶¶ 21-28. Shigeta told plaintiff having sex with prostitutes was a "Japanese" style of conducting business, and that having "double penetration" sex was a way to commemorate business dealings. Id., ¶ 32. Shigeta had an obsession with women's crotches, and repeatedly took surreptitious photographs of women's crotches, which he then would display to plaintiff. On one occasion, Shigeta took such a crotch shot of a young woman who may have been a minor at the time. Id., ¶¶ 34-35. On another trip, Shigeta forced plaintiff to strip off his clothes, and to parade naked in front of Shigeta, to the latter's evident delight. Id., ¶¶ 37-38. These are "only examples of the sexual harassment," plaintiff suffered, and "do not constitute every instance of sexual harassment." Id., ¶ 49. Plaintiff was offended and humiliated by this series of harassing incidents. Id., ¶¶ 24, 27, 33, 38-40, 52, 53, 56, 57, 64. The harassment altered the conditions of plaintiff's employment, creating a hostile atmosphere. Id., ¶ 62.

Defendants' approach is "divide and conquer," but this Court must consider the "totality of the circumstances," rather than look at each incident in isolation.

> Whether a reasonable person would find a given work environment to be hostile depends on the totality of the circumstances; "considerations include: (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's work performance."

Mormol v. Costco Wholesale Corp., 364 F.3d 54, 58 (2d Cir. 2004). A hostile environment can be created if the conduct is sufficiently severe *or* pervasive. A single act can give rise to a harassment claim. Id. at 59. In applying this test, for example, on a summary judgment motion this Court refused to dismiss a harassment claim where the plaintiff alleged two "racially

18

insensitive" comments over a span of several months, differential discipline, co-worker taunts about religious beliefs, and a refusal to give plaintiff days off during snowstorms. Yarde v. Good Samaritan Hospital, 360 F. Supp. 2d 552, 567 (S.D.N.Y. 2005). Obviously, the conduct alleged in this case is more severe than in Yarde, and *this* is a motion on the pleadings. Perhaps this Court in Yarde was mindful of the Second Circuit's emphasis that:

> "[I]t is not how long the sexual innuendos, slurs, verbal assaults, or obnoxious course of conduct lasts. The offensiveness of the individual actions complained of is also a factor to be considered in determining whether such actions are pervasive." . . . "There is neither a threshold magic number of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim."

Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69, 70 (2d Cir. 2000).

Some of the conduct alleged here was extraordinarily severe (involving prostitutes, attempts to force sex, forcing plaintiff to "get naked!"), and by itself meets the standard for creating a hostile work environment. Yaba v. Roosevelt, 961 F. Supp. 611, 620 (S.D.N.Y. 1997) (a serious incident of sexual touching and harassment sufficed); Quantock v. Shares Marketing Services, Inc., 312 F.3d 899, 904 (7th Cir. 2002) (one incident where boss asked employee for sex in the course of a conversation lasting a few minutes sufficed). It is also not true, as defendants assume, that the conduct was infrequent. Plaintiff alleges a series of incidents occurring over a period of several months, particularly when he had encounters with Shigeta during out of state travel (in Prague, Tokyo, Florida and Brazil). Every such work event resulted in sexually harassing behavior by Shigeta. In Breeding v. Cendant Corp., No. 01 Civ. 11563 (GEL), 2003 U.S. Dist. LEXIS 6558, at *2-*5, 91 Fair Empl. Prac. Cas. (BNA) 1353 (S.D.N.Y. Apr. 10, 2003), the plaintiff alleged *four comments* spanning a period of six months. Nonetheless, the Court found there was a jury question, given the overall context.

> Here, Mancuso was Breeding's immediate supervisor, and a factfinder could conclude that his comments were frequent in relation to the limited contact between them, given plaintiff's frequent travel out of the office and the decentralized nature of the company.

Id. at *13-*14. And this case does not involve mere "comments," but rather physically humiliating, degrading conduct. Mormol, 364 F.3d at 58.

Finally, defendants' efforts to take the incidents involving women "out of the equation"

are unavailing. Db13. First, pictures can be part of the "totality of circumstances" giving rise to sexual harassment. Iannone, 941 F. Supp. at 410-11; Baskerville v. Culligan International Co., 50 F.3d 428, 430-31 (7th Cir. 1995). This is true even if the pictures are equally offensive to men and women, and are not directed at the plaintiff. Huffman v. City of Prairie Village, 980 F. Supp. 1192, 1198 (D. Kan. 1997). See also Hutchinson v. Amateur Electronic Supply, Inc., 42 F.3d 1037, 1043 (7th Cir. 1994) ("That conduct is egregious enough to offend the sensibilities of men as well as women cannot serve to immunize it for Title VII purposes"). Second, it does not matter whether plaintiff was individually the "target" of every instance of Shigeta's harassment. "[B]ecause the crucial inquiry focuses on the nature of the workplace environment as a whole, a plaintiff who herself experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support her claim." Whidbee, 223 F.3d at 69. Indeed, even "remarks made outside a plaintiff's presence can be relevant to a hostile work environment claim." Leibovitz v. New York City Transit Authority, 252 F.3d 179, 190 (2d Cir. 2001). Here plaintiff alleges several incidents that occurred in his presence, usually directly targeting him. Only discovery, however, will reveal the full scope of the hostile environment.

## B.    Plaintiff's Sexual Harassment Claim Is Not Time Barred

Defendants argue that plaintiff's claims are *all* time barred, because *some* of the incidents occurred outside the limitations period.[3] However, under the continuing violations doctrine, all of plaintiff's claims are timely if even one event constituting the harassment occurred within the limitations period. As the Supreme Court explained it, "as long as each act is part of the whole," for a sexual harassment claim there is no difference between the following two scenarios:

> (1) Acts on days 1-400 create a hostile work environment. The employee files the charge on day 401. . . . (2) Acts contribute to a hostile work environment on days 1-100 and on day 401, but there are no acts between days 101-400.

AMTRAK v. Morgan, 536 U.S. 101, 118, 122 S. Ct. 2061, 2075 (2002). Either way, the events

---

[3] Defendants' claim that the bathhouse incident is outside the limitations period depends on their extra-pleading submission, which should be rejected. Defendants claim that the "double penetration" incident should be time barred, because they do not know when it occurred. Db8. However, pre-litigation, defense counsel *admitted* Shigeta made the comments about "double-penetration" sex, but supposedly did so only as a joke. See Biegel Decl., Exhibit A, at 2.

of days 1-100 would be timely, unless the "act on day 401 had no relation" to the prior acts. Id.

Under this doctrine, plaintiff's claims are timely, especially on a Rule 12(b)(6) motion. Contrary to defendants' argument, plaintiff does not need to show a steady stream of continuous daily abuse to assert the continuing violation doctrine. Rather, he needs to show only one event within the limitations period, even if separated by a substantial gap of time, as long as it has some relation to the prior harassment. Courts have repeatedly found claims timely based on one isolated event within the limitations period. Huaman v. American Airlines, Inc., No. 00-CV-6336 (FB)(MDG), 2005 U.S. Dist. LEXIS 21777, at *16 (E.D.N.Y. Sept. 29, 2005) (single instance of criticism, coming after a six month gap, rendered all claims timely); Yaba, 961 F. Supp. at 624 (one timely incident rendered two incidents a year prior timely); Clark v. State, 302 A.D.2d 942, 942, 754 N.Y.S.2d 814, 816 (4th Dep't 2003) (one write up rendered all prior incidents of harassment timely); Sier v. Jacobs Persinger & Parker, 276 A.D.2d 401, 401, 714 N.Y.S.2d 283, 285 (1st Dep't 2000) (one hostile comment rendered all prior incidents timely).

Defendants also err when they assume the only possibly timely event was the Sharapova "crotch shot." Even leaving aside the factual disputes, see supra at 20, defendants forget three other events all within the limitations period: Shigeta's threat to fire plaintiff if he ever complained to human resources about the prior harassment; Shigeta's shunning of plaintiff; and plaintiff's termination. The Second Circuit has held that "the continuing violation theory may be used where there have been specific and related instances of discrimination, and the employer has permitted them to continue unremedied for so long that its inactions may reasonably be viewed as tantamount to a policy or practice of tolerating such discrimination." Fitzgerald v. Henderson, 251 F.3d 345, 362 (2d Cir. 2001). Given plaintiff's repeated complaints about the harassment, see Point IV.C infra, Shigeta's ongoing behavior shows a practice of tolerating such conduct. Such a failure to remedy specific incidents of harassment, has been found repeatedly to render otherwise stale claims timely under a continuing violations doctrine. Coleman v. B.G. Sulzle, Inc., 402 F. Supp. 2d 403, 414 (N.D.N.Y. 2005); Yaba, 961 F. Supp. at 624. Likewise, courts have repeatedly found that when harassing incidents end in discharge, if the termination is

21

within the limitations period, then the prior acts of harassment are timely as well. <u>Young v.</u> <u>Town of Fallsburg</u>, 774 F. Supp. 205, 208 (S.D.N.Y. 1991) (series of seven incidents were timely, because final act of termination was timely); <u>Garvey v. Dickinson College</u>, 761 F. Supp. 1175, 1183 (M.D. Pa. 1991) (plaintiff's firing related to prior harassment, and so harassment claims were timely). Given the close relation between the events of 2006 and the prior harassment, all of plaintiff's claims are timely.

### C.   Defendants Do Not Have A Valid Affirmative Defense Based On An Alleged Sexual Harassment Policy

Defendants' invocation of the <u>Faragher/Ellerth</u> doctrine suffers from four defects. First, whether defendants had an effective sexual harassment policy is a disputed issue. Defendants assert the existence of the policy in the teeth of plaintiff's allegation to the contrary, Amended Complaint, ¶ 67, and their position relies on extra-pleading submissions. Leaving this aside, the documents they submitted are inconclusive. The form signed by plaintiff is *not* for a harassment policy. It is for an "Employee Manual," and it says *nothing* about harassment. Fidoten Decl., Exhibit C. The purported "policy" is undated, and nothing on the document indicates it was ever in *any* "Employee Manual," much less the copy signed for by plaintiff. Fidoten Decl., Exhibit B.

Second, contrary to defendants' argument, plaintiff complained repeatedly about the harassment, not just to Shigeta, but also to plaintiff's immediate supervisor, Ron Rosen. This is confirmed by Rosen's sworn Declaration. Dwyer Decl., Exhibit B; Biegel Decl., ¶¶ 3-7. This is consistent with the alleged policy, which directs employees to complain to their supervisors. Fidoten Decl., Exhibit B. Thus, plaintiff followed the policy (if it existed), but never received any response, other than Shigeta's threat of firing. Amended Complaint, ¶¶ 41-42. This shows not only that plaintiff used whatever policy allegedly existed, but also calls into question whether the policy was effective. The mere existence of a policy – regardless of whether it is enforced – is not dispositive. <u>Mack v. Otis Elevator Co.</u>, 326 F.3d 116, 128 (2d Cir. 2003). The existence of a paper policy that is not actually enforced raises questions about whether "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior." <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 765, 118 S. Ct. 2257, 2270 (1998).

Third, the affirmative defense is forfeited when a supervisor with immediate authority harasses the plaintiff, and when a tangible employment action is taken against the plaintiff. Ellerth, 524 U.S. at 765, 118 S. Ct. at 2270. That is precisely what happened here. Shigeta was the head of the agency, and supervised plaintiff as well as plaintiff's boss. Plaintiff was fired by Shigeta, and as alleged in the complaint, the firing was directly related to the harassment. Amended Complaint, ¶¶ 45, 69-70. In this case, the corporate defendant "is strictly liable for the supervisor's misconduct." Ferraro v. Kellwood Co., 440 F.3d 96, 101 (2d Cir. 2006).

Last, if the supervisor/harasser plainly invokes his official power to harass the employee, the employer is strictly liable anyway. Ferraro, 440 F.3d at 101. This can be true even for employer organized social events. In Tomka v. The Seiler Corp., 66 F.3d 1295 (2d Cir. 1995), the supervisors used their apparent authority to pressure plaintiff to drink heavily at a company sponsored dinner, which plaintiff felt compelled to attend. The Court held this sufficed to render the employer liable for the supervisors' rape of the employee. Id. at 1306-07. In this case, plaintiff alleges in detail how Shigeta used his authority to compel plaintiff to attend "outings" such as the brothel and bathhouse, and how plaintiff was forced/duped into these sexually degrading experiences. Amended Complaint, ¶¶ 21, 24, 27-29, 37-38. Shigeta was not a low level supervisor. He was the agency's head. Defendants will probably never successfully invoke the Faragher/Ellerth doctrine, but certainly it is irrelevant to this motion.

## V. PLAINTIFF HAS STATED CLAIMS FOR RETALIATION AND DEFAMATION, BASED ON DEFENDANTS' CONDUCT TAKEN IN REPRISAL FOR PLAINTIFF'S ORIGINAL COMPLAINT IN THIS ACTION

After the original Complaint and EEOC Charge were filed, defendants retaliated by defaming plaintiff publicly, to damage his personal and professional reputation, by falsely accusing him of fraud and attacking his professional competence. Amended Complaint, ¶¶ 98-103. It has long been established that anti-retaliation provisions "extend[] beyond workplace-related or employment-related retaliatory acts and harm." Burlington Northern & Santa Fe Ry. Co. v. White, __ U.S. __, 126 S. Ct. 2405, 2414 (2006). See, e.g., Robinson v. Shell Oil Co., 519 U.S. 337, 339, 346, 117 S. Ct. 843, 845, 849 (1997) (giving a former employee a negative

reference can constitute retaliation). The Second Circuit has held repeatedly that an employer who makes false and disparaging statements about a former employee as reprisal for protected activity has committed unlawful retaliation. Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 179 (2d Cir. 2005); Pantchenko v. C.B. Dolge Co., 581 F.2d 1052, 1054-55 (2d Cir. 1978). Further, under Burlington, 126 S. Ct. at 2409, the employer's actions are retaliatory if "they could well dissuade a reasonable worker from making or supporting a charge of discrimination." The public attacks on plaintiff's character easily meet this test. See also Hillig v. Rumsfeld, 381 F.3d 1028, 1029 (10th Cir. 2004) (employee suffered retaliation due to employer's post-employment negative statements, because they would have a "likely effect on future job appointments"). Based on precisely this theory, just recently, the First Circuit affirmed a substantial verdict for a plaintiff who was retaliated against by defamatory statements made about her after she asserted a discrimination claim, *even though* her companion defamation claim failed. See Dixon v. Int'l Brotherhood of Police Officers, 504 F.3d 73 (1st Cir. 2007).

Separately, defendants' actions also give rise to a defamation claim. Defendants claim the Amended Complaint does not specifically plead the details of the defamation, yet they somehow knew it related to statements they made in "the press." Db4. At any rate, there is no mystery. AdWeek published an article on November 5, 2007, which attributed to Andree and Dentsu statements that attacked plaintiff's professional competence, and accused plaintiff of "fraud" in connection with his expenses at Dentsu. Dwyer Decl., Exhibit C. Defendants do *not* challenge that this states a claim for defamation. Rather, they contend that plaintiff is bound by the heightened *pleading requirements* of N.Y. C.P.L.R. 3016(a). But although the *substantive* law of defamation is governed by state law, in federal court the *procedural* requirements for how particular the pleadings must be are governed by Rule 8, not the CPLR. Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986) ("the mode of pleading defamation is governed by Rule 8"). However, even if this Court believes it should follow the CPLR for pleading requirements, the proper course in this instance would be to allow plaintiff to re-plead. See supra at 10.

24

## VI. PLAINTIFF HAS STATED CLAIMS AGAINST THE INDIVIDUAL AND CORPORATE DEFENDANTS

Individuals are liable under Section 1981, if they were "supervisors who were personally involved in the discriminatory activity." Hicks v. IBM, 44 F. Supp. 2d at 597; Whidbee, 223 F.3d at 75. Likewise, individuals are liable under § 296(6) of the NYHRL, "if they actually participated in the discrimination." Hicks, 44 F. Supp. 2d. at 599. Individuals are also liable under the NYCHRL if they engage in discriminatory acts. Kato v. Ishihara, 239 F. Supp. 2d 359, 365 (S.D.N.Y. 2002). Thus, the Amended Complaint states a claim against Shigeta and Andree who directly participated in the unlawful firing, and against Shigeta for his harassment.

As for Dentsu Holdings, "an individual may be the employee of more than one 'employer'" for purposes of a discrimination suit. Alie v. NYNEX Corp., 158 F.R.D. 239, 245 (E.D.N.Y. 1994). The term "employer" is to be construed "liberally," and "the absence of a direct employment relationship does *not* bar a [discrimination] claim," so that "liability extends beyond conventional single-employer situations." Id. A parent corporation may be liable if interferes with its subsidiary's employment policies. Id. at 246. While there are several relevant factors, as defendants state, the most important question is whether the parent "exercised control over the employee's conduct and the incidents of his employment." Id., quoted in Db23. Plaintiff specifically alleges Shigeta's control (as CEO of Holdings) over plaintiff's employment, and that Shigeta participated in the decision to fire plaintiff. Amended Complaint, ¶ 45. This allegation suffices to establish liability for Dentsu Holdings on this motion.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss should be denied in its entirety.

Dated: December 9, 2007

Respectfully submitted,

THE DWYER LAW FIRM, L.L.C.
17 Academy Street, Suite 1010
Newark, New Jersey 07102
Attorneys for Plaintiff

By: _____
Andrew Dwyer (AD/7793)

25