# EXHIBIT B

# DAVIS & GILBERT LLP
## 1740 BROADWAY
## NEW YORK, NEW YORK 10019
## (212) 468-4800

DIRECT DIAL NUMBER
(212) 468-4822
EMAIL ADDRESS
HRUBIN@DGLAW.COM

MAIN FACSIMILE
(212) 468-4888
PERSONAL FACSIMILE
(212) 621-0919

January 4, 2007

## BY FACSIMILE AND BY FEDERAL EXPRESS

Andrew Dwyer, Esq.
The Dwyer Law Firm, L.L.C.
17 Academy Street
Suite 1010
Newark, New Jersey 07102

Re:    Steve Biegel

Dear Mr. Dwyer:

This firm represents Dentsu Holdings USA, Inc. ("Holdings"), Dentsu America, Inc., formerly DCA Advertising, Inc., ("Dentsu"), Toyo Shigeta ("Shigeta") and Timothy Andree ("Andree") (collectively, the "Defendants"). We write in response to your letter dated December 21, 2006, attached to which is the proposed complaint (the "Complaint") of your client, Steve Biegel ("Biegel"). In sum, all of the claims in the Complaint are wholly without merit. Indeed, the facts are so inaccurate – and inflammatory – that it is a transparent attempt to blackmail the Company into settling a case without any basis.

Before filing this false and scandalous complaint Biegel should think long and hard about the fact that, while it may cause some short term embarrassment to defendants, the attached pictures and counterclaim will have much more embarrassing impact on him and an irreparable impact on his future career.

## I.    Biegel Does Not Have a Claim of Sexual Harassment

Biegel's claim of sexual harassment is comprised solely of a few isolated instances in which he (1) willingly partook while abroad on two separate occasions and (2) twice witnessed Shigeta taking photographs of people in public. Biegel's claim of sexual harassment will fail because the alleged harassment was not severe or pervasive such that it affected the terms and conditions of his employment, was neither subjectively nor objectively offensive, and

DAVIS & GILBERT LLP

Andrew Dwyer, Esq.
1/4/2007
Page 7

had nothing to do with the decision to terminate Biegel. However, if, as is alleged in the Complaint, Shigeta did partake in the termination decision, the inference of discrimination would be further belied by the fact that Shigeta hired Biegel approximately three years earlier knowing that he was Jewish. *See Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000) (noting that the fact that the same person who fired the plaintiff hired him three years earlier was highly relevant to dismissal of plaintiff's discrimination claim).

Moreover, even if Biegel were to establish a *prima facie* case of discriminatory termination, which he cannot, Dentsu had a legitimate business reason for terminating him. For example, as discussed above, Canon, a major Dentsu client, almost cancelled its campaign because it was completely unsatisfied with a commercial that Biegel was in charge of producing. In addition, when Andree became President of Dentsu, he had a meeting with Biegel, during which Biegel badmouthed Fidoten by calling him "useless." Also at that meeting, Biegel stated that Andree should promote him to co-creative director with Rosen, and if Andree granted his request, he would "do his job better." When Andree relayed this conversation to Rosen, Rosen stated that Andree should fire Biegel for his unprofessional attitude, and Andree agreed.[1]

III.    Biegel Does Not Have a Claim For Retaliation

Biegel's retaliation claim lacks any merit whatsoever. To state a claim for retaliation under Title VII and the New York State and City Human Rights Laws, an employee must show that (1) he was engaged in a protected activity; (2) the employer was aware of his participation in the protected activity; (3) the employer took adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action. *Carchidi v. Kenmore Dev. Corp.*, 123 Fed. Appx. 435, 435 (2d Cir. 2005); *Forrest*, 3 N.Y.3d at 312-13, 819 N.E.2d at 1012, 786 N.Y.S.2d at 396. Biegel will not be able to establish a *prima facie* case of retaliation.

First, Biegel never engaged in a protected activity. As discussed above, he never complained to anyone at Dentsu about the alleged harassing incidents. Moreover, even if his discussion with Shigeta about the bathhouse occurred, it did not constitute a "complaint" because it was merely a general comment that failed to put Shigeta or Dentsu on notice that a problem existed and that came far too long after the alleged incident to be considered a complaint. *See Schmidt*, 2006 U.S. Dist LEXIS 27663, at *39, *44.

---

[1]    This is not the first time Biegel's employers had issues with his work performance and attitude. For example, Biegel had been provided with a serious written warning about his unprofessional behavior while at his previous job with Ogilvy & Mather Worldwide. This included making bad faith requests for personal favors and acting vulgar and rude toward his co-workers, superiors and outside vendors, which resulted in five female staff members refusing to work with him.

DAVIS & GILBERT LLP

Andrew Dwyer, Esq.
1/4/2007
Page 10

against Shieta or Andree under Title VII will be barred, and any claims of sexual harassment brought under Title VII against any of the Defendants will be dismissed as untimely.

Since Biegal did not respond within the twenty-one days provided for in his severance offer the Company no longer owes him anything. Since all of the Defendants are represented by this firm, contact me directly if you want to discuss this matter further. Please be advised that this letter does not contain a complete statement of our clients' position with respect to this matter, nor does it constitute in any way a waiver or limitation of any of their rights, all of which are expressly reserved.

Very truly yours,

Howard J. Rubin

cc:     Shivakumar Prabhat