UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| STEVE BIEGEL, | : | Hon. Colleen McMahon, U.S.D.J. |
| Plaintiff, | : | |
| | : | 07 Civ. 9653 (CM) (THK) |
| v. | : | |
| DENTSU HOLDINGS USA, INC., DENTSU AMERICA, INC., TOYO SHIGETA and TIMOTHY ANDREE, | : | |
| Defendants. | : | |

---

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM
OF LAW IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS THE AMENDED COMPLAINT**

---

Andrew Dwyer (AD-7793)
Of Counsel and
On the Brief

THE DWYER LAW FIRM, L.L.C.
17 Academy Street, Suite 1010
Newark, New Jersey 07102
(973) 242-3636
Attorneys for Plaintiff

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

RELEVANT PROCEDURAL AND FACTUAL BACKGROUND ............................................1

ARGUMENT

I. ON A CONVERTED MOTION FOR SUMMARY JUDGMENT, DISMISSAL SHOULD NOT BE GRANTED WHERE THERE ARE DISPUTED ISSUES OF MATERIAL FACT..................................................................2

II. BECAUSE OF DISPUTED ISSUES OF FACT, PLAINTIFF'S SEXUAL HARASSMENT CLAIM SHOULD NOT BE DISMISSED BASED ON THE "*FARAGHER-ELLERTH*" DOCTRINE ...............................................3

    A.    Plaintiff Did Complain About The Sexual Harassment To His Supervisors, Thus Defeating The "*Faragher-Ellerth*" Affirmative Defense..................................................................................4

    B.    The "*Faragher-Ellerth*" Affirmative Defense Is Forfeited Anyway, Because Plaintiff Was Harassed By His Supervisor, And The Same Supervisor Took Tangible Employment Actions Against Plaintiff..................................................................................7

    C.    The "*Faragher-Ellerth*" Affirmative Defense Is Also Forfeited Because The Supervisor/Harasser Invoked His Official Authority To Harass The Plaintiff ..................................................................8

CONCLUSION..............................................................................................................................9

# TABLE OF AUTHORITIES

**Page**

**CASES**

Barnett v. Revere Smelting & Refining Corp.,
  67 F. Supp. 2d 378 (S.D.N.Y. 1999) ............................................................................2

Burlington Industries, Inc. v. Ellerth,
  524 U.S. 742, 118 S. Ct. 2257 (1998) .................................................................. 3, 6, 7

Faragher v. City of Boca Raton,
  524 U.S. 775, 118 S. Ct. 2275 (1998) .................................................................. 3, 6-7

Ferraro v. Kellwood Co.,
  440 F.3d 96 (2d Cir. 2006) ............................................................................... 7, 8, 9

Jamieson v. Poughkeepsie City School District,
  195 F. Supp. 2d 457 (S.D.N.Y. 2002) ..........................................................................2

Mack v. Otis Elevator Co.,
  326 F.3d 116 (2d Cir. 2003) ..................................................................................6, 7

National Life Ins. Co. v. Solomon,
  529 F.2d 59 (2d Cir. 1975) ..........................................................................................2

Sullivan v. Newburgh Enlarged School District,
  281 F. Supp. 2d 689 (S.D.N.Y. 2003) ..........................................................................2

Tomka v. The Seiler Corp.,
  66 F.3d 1295 (2d Cir. 1995) ........................................................................................8

**STATUTES AND RULES**

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 1, 2

Local Civil Rule 56.1 ....................................................................................................2

## PRELIMINARY STATEMENT

Plaintiff Steve Biegel, by his attorneys, respectfully submits this Supplemental Brief in opposition to defendants' motion to dismiss the Amended Complaint. Defendants' motion should be denied in its entirety.

Defendants previously filed a motion to dismiss plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6). On January 7, 2008, this Court issued a preliminary ruling, in which the Court stated that the "defendants' Rule 12(b)(6) motion seeking dismissal of all claims on grounds other than Faragher-Ellerth is going to be denied." The Court noted that "it seems quite clear that the plaintiff is entitled to proceed with this case – unless there is a viable Faragher-Ellerth defense that can be asserted to his claims of harassment, whether based on gender or race (not religion)."

Based on this ruling, this Court "convert[ed] ONLY that portion of defendants' motion to dismiss that addressed Faragher-Ellerth as a defense to the claims of harassment into a motion for summary judgment." (The emphasis is in the original.) The Court directed the parties to make additional submissions related to that defense, and in particular instructed plaintiff "to respond ONLY to that aspect of the motion, and to present admissible evidence about when and to whom he complained about the various incidents that allegedly constituted harassment."

Therefore, in accordance with those instructions, with this Supplemental Brief plaintiff is submitting the accompanying Supplemental Declaration of Steve Biegel (dated Jan. 15, 2008), which details evidence related to the defendants' assertion of the Faraher-Ellerth defense. This Supplemental Brief, in turn, summarizes the main legal points as to why we contend the Faragher-Ellerth defense does not provide a basis for dismissing plaintiff's sexual harassment claim based on the present record. Per the Court's instructions, we are not addressing any issue other than the Faragher-Ellerth defense.

## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff has already set out what we contend is the relevant procedural and factual background for this motion in our prior Memorandum of Law in Opposition to Defendants'

Motion to Dismiss the Amended Complaint, at 2-4 (dated Dec. 9, 2007). Any additional relevant facts are referenced in the argument below. Because we are proceeding on a Rule 12(b)(6) motion that has been converted to a motion for summary judgment sua sponte, and because the Court has instructed plaintiff to proceed first, defendants have not yet filed any Statement of Material Facts pursuant to Local Civil Rule 56.1. Therefore, it is not possible for plaintiff to respond to a Rule 56.1 Statement, as would normally be contemplated by the Rules. However, we are also separately submitting a Rule 56.1 Statement of *additional* material facts as to which, we contend, there exists a material issue to be tried, and which thus precludes summary judgment. See Local Civil Rule 56.1(b).

## ARGUMENT

### I. ON A CONVERTED MOTION FOR SUMMARY JUDGMENT, DISMISSAL SHOULD NOT BE GRANTED WHERE THERE ARE DISPUTED ISSUES OF MATERIAL FACT

Although the defendants' Rule 12(b)(6) motion has been converted to a motion for summary judgment with regard to the Faragher-Ellerth defense, it remains the case that the motion must be denied if there are disputed issues of material fact. "Since summary judgment is a 'drastic device,' . . . it should not be granted when there are major factual contentions in dispute." National Life Ins. Co. v. Solomon, 529 F.2d 59, 61 (2d Cir. 1975). As this Court has explained more than once:

> The Second Circuit has instructed that district courts must be "especially cautious" in deciding whether to grant the "drastic remedy" of summary judgment in a discrimination case, "because the employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination." . . . Because discriminatory acts are often "hidden under a veil of self-declared innocence," a discrimination victim is "seldom able to prove his or her claim by direct evidence and is usually constrained to rely upon the commutative weight of circumstantial evidence. . . ."

Sullivan v. Newburgh Enlarged School District, 281 F. Supp. 2d 689, 701-02 (S.D.N.Y. 2003); Barnett v. Revere Smelting & Refining Corp., 67 F. Supp. 2d 378, 392 (S.D.N.Y. 1999); Jamieson v. Poughkeepsie City School District, 195 F. Supp. 2d 457, 466, 468 (S.D.N.Y. 2002). Below, we detail three areas where there are material facts as to which there exists a genuine issue to be tried, precluding summary judgment based on the Faragher-Ellerth defense.

II. **BECAUSE OF DISPUTED ISSUES OF FACT, PLAINTIFF'S SEXUAL HARASSMENT CLAIM SHOULD NOT BE DISMISSED BASED ON THE "*FARAGHER-ELLERTH*" DOCTRINE**

Defendants have invoked the Faragher-Ellerth doctrine, which is based on the companion decisions in Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275 (1998) and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257 (1998). Generally, in a sexual harassment case, the Farragher-Ellerth doctrine provides the employer with an affirmative defense, if "the employer exercised reasonable care to prevent and correct promptly any harassing behavior," *and* "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Faragher, 524 U.S. at 807, 118 S. Ct. at 2293.

In this case, the defendants' invocation of the Faragher-Ellerth doctrine is based *solely* on their assertion that they had a written sexual harassment policy, and that plaintiff failed to complain to his supervisors about the harassment, as provided under the alleged policy. See Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint, at 16-18 (dated Nov. 26, 2007). Other than the allege existence of the paper policy, defendants do not allege any other way in which they "exercised reasonable care to prevent and correct promptly any harassing behavior." Faragher, 524 U.S. at 807, 118 S. Ct. at 2293.

For purposes of this Supplemental Brief only, we assume arguendo that defendants had a paper policy that supposedly prohibited sexual harassment. We note, however, that this assumption may not be borne out if full discovery were to take place. Plaintiff alleges that he does not recall ever being told by anyone at Dentsu anything about a sexual harassment policy. Nor was it addressed in any kind of meeting or training. Supplemental Declaration of Steve Biegel, ¶ 3 (dated Jan. 15, 2007) (hereinafter "Supp. Biegel Decl.").

Defendants have produced (as part of their prior motion to dismiss), an "Acknowledgement Form," signed by Biegel, which states that he received a "Policies and Procedures Employee Manual." Declaration of Douglas Fidoten, Exhibit C annexed thereto (dated Nov. 26, 2007) (hereinafter "Fidoten Decl."). Further, defendants allege that this

"Policies and Procedures Employee Manual" contained a written sexual harassment policy. Fidoten Decl., ¶ 3. According to defendants, the sexual harassment policy contained in the "Policies and Procedures Employee Manual" required employees to bring any sexual harassment complaints to the attention of their supervisors. Fidoten Decl., Exhibit B annexed thereto ("[a]ny employee who has a complaint of sexual harassment . . . must bring the problem to the attention of their supervisor").

Plaintiff concedes that he signed the "Acknowledgement Form," but points out that the "Acknowledgement Form" itself does not actually say *anything* about sexual harassment or anything about any sexual harassment policy. Fidoten Decl., Exhibit C annexed thereto; Supp. Biegel Decl., ¶ 4. Plaintiff's sworn statement is that he does not actually remember whether he actually received the "Policies and Procedures Employee Manual" or not. However, if he did receive a copy, he was not aware that it somewhere contained a sexual harassment policy, because no one ever mentioned to him that such a policy was contained in a manual, or anywhere else for that matter. Supp. Biegel Decl., ¶ 5.

It is possible that full discovery may show, in fact, that the "Policies and Procedures Employee Manual" was not distributed to employees, and/or that employees were generally unaware of the existence of any sexual harassment policy. However, for purposes of this Supplemental Brief only, we will proceed on the assumption that a sexual harassment policy was distributed to employees, including plaintiff. Even if that is true, however, for at least three reasons, plaintiff's sexual harassment claim cannot be dismissed as a matter of law, based on the Faragher-Ellerth defense.

> A.  **Plaintiff Did Complain About The Sexual Harassment To His Supervisors, Thus Defeating The "*Faragher-Ellerth*" Affirmative Defense**

First, contrary to defendants' argument, plaintiff complained repeatedly about the harassment, not just to Shigeta, but also to plaintiff's immediate supervisor, Ron Rosen. This is confirmed by Rosen's sworn Declaration. Declaration of Andrew Dwyer, Exhibit B (dated Nov. 29, 2007) (hereinafter "Dwyer Decl."). This is consistent with the alleged policy, which directs

4

employees to complain to their supervisors. Fidoten Decl., Exhibit B. In particular, plaintiff alleges the following complaints:

> *In June, 2004, "immediately" on his return from a business trip to Prague with defendant Shigeta, where Shigeta forced plaintiff to go to a brothel, and tried to force him to have sex with a prostitute, plaintiff complained about the incident to his immediate supervisor, Ron Rosen. Supp. Biegel Decl., ¶ 14.
>
> *In October, 2004, when plaintiff was forced/duped into going to a bathhouse, and to take off his clothes and take a nude bath with Shigeta, plaintiff complained at the time of the event itself. In particular:
>
>> ---Plaintiff complained directly to Shigeta himself, telling Shigeta that he did not want to take a bath with him, but Shigeta nonetheless ordered him to do so. Supp. Biegel Decl., ¶ 18.
>>
>> ---Plaintiff then immediately complained to his supervisor, Ron Rosen, about being forced to take off his clothes and take a bath with his boss. Supp. Biegel Decl., ¶ 19.
>>
>> ---Plaintiff then also complained to Douglas Fidoten (another Dentsu manager) about being required to take a bath with Shigeta. In response, Fidoten merely shrugged, and said "when in Rome . . . ." Supp. Biegel Decl., ¶ 20.
>
> *After the bathhouse incident, Biegel complained again to his immediate supervisor, Ron Rosen, that he felt uncomfortable and humiliated by the incident, and that he felt he had been manipulated and forced to take part. Supp. Biegel Decl., ¶ 21.
>
> *In May, 2006, when plaintiff learned that Shigeta was planning to take another employee, Neal Gomberg, to Tokyo, plaintiff confronted Shigeta about the bathhouse incident again. Plaintiff told Shigeta how humiliating and uncomfortable the experience had made him, and told Shigeta he did not think he should take Gomberg to the bathouse. Plaintiff further told Shigeta that he had been so angry about what had happened, that he had thought about complaining to Human Resources. Shigeta's response was to threaten to fire plaintiff, which obviously showed that Shigeta himself took seriously plaintiff's threat to go to Human Resources. Supp. Biegel Decl., ¶ 22.

According to defendants themselves, plaintiff's behavior was consistent with their alleged policy. According to defendants, the employees were supposed to complain about sexual harassment to their supervisors. Fidoten Decl., Exhibit B. Plaintiff did this. He complained to Rosen repeatedly, and he complained directly to Shigeta himself. He also complained to Fidoten, who by defendants' own admission was a high level manager in the company. Fidoten Decl., ¶ 1. Indeed, there was no one else in plaintiff's chain of command to whom he could have complained, other than Shigeta and Rosen. Supp. Biegel Decl., ¶ 6.

Significantly, plaintiff repeatedly raised these complaints, even though Shigeta was the

highest level official in the company, and even though there were several reasons for plaintiff to be fearful of reprisal. Shigeta repeatedly threatened other employees with termination, and in fact one employee was fired after Shigeta threated to fire him for complaining. This and other factors created an atmosphere where plaintiff was legitimately fearful of reprisal should he raise any complaint about Shigeta. Supp. Biegel Decl., ¶¶ 8-11. Significantly, defendants' putative sexual harassment policy does *not* contain any language protecting employees from retaliation for complaining about sexual harassment. Fidoten Decl., Exhibit B.

There was never any effective remedial response to plaintiff's repeated complaints. Other than Mr. Fidoten's shrug, the only response plaintiff received was Shigeta's threat to fire him. Supp. Biegel Decl., ¶ 24. This shows not only that plaintiff used whatever policy allegedly existed, but also calls into question whether the policy was effective. The mere existence of a policy – regardless of whether it is enforced – is not dispositive. Mack v. Otis Elevator Co., 326 F.3d 116, 128 (2d Cir. 2003). The existence of a paper policy that is not actually enforced raises questions about whether "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior." Ellerth, 524 U.S. at 765, 118 S. Ct. at 2270. In this case, given plaintiff's repeated complaints – and the lack of any effective response – there is a factual dispute whether defendants can make out the first element of their defense. In other words, it is not possible to say as a matter of law, on this record, that Dentsu exercised reasonable care to prevent and correct any sexually harassing behavior. See also Faragher, 524 U.S. at 808, 118 S. Ct. at 2293 (employer could not establish first element of affirmative defense based on written sexual harassment policy, where the employer failed to disseminate the policy to all employees, and where the employer made no effort to keep track of the conduct of supervisors).

But however the Court ultimately resolves that issue, it cannot be gainsaid that Dentsu cannot make out the second element of its defense, that is, Dentsu cannot show based on the undisputed facts that plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Faragher, 524

6

U.S. at 807, 118 S. Ct. 2293. For example, in <u>Mack v. Otis Elevator, supra</u>, the employee alleged that she had complained to the harasser's supervisor, stating that the harasser was always making sexist comments, and asking to be transferred. This was enough, according to the Second Circuit, to preclude granting summary judgment based on the <u>Faragher-Ellerth</u> defense. <u>Otis v. Mack Elevator</u>, 326 F.3d at 128. Plaintiff's complaints similarly preclude granting summary judgment here. Because defendants cannot show that plaintiff "unreasonably failed" to complain to his supervisors, defendants cannot satisfy the elements of this affirmative defense.

    **B.**    **The "*Faragher-Ellerth*" Affirmative Defense Is Forfeited Anyway, Because Plaintiff Was Harassed By His Supervisor, And The Same Supervisor Took Tangible Employment Actions Against Plaintiff**

Even if defendants were able to establish the elements of a <u>Faragher-Ellerth</u> defense, the affirmative defense is forfeited when a supervisor with immediate authority harasses the plaintiff, and when a tangible employment action is taken against the plaintiff. <u>Ellerth</u>, 524 U.S. at 765, 118 S. Ct. at 2270. That is precisely what happened here. Shigeta was the head of the agency, and supervised plaintiff as well as plaintiff's boss. Plaintiff was fired by Shigeta, and the firing was directly related to the harassment. Supp. Biegel Decl., ¶ 23; <u>see also</u> Amended Complaint, ¶¶ 45, 69-70. Where harassment culminates in a tangible employment action being taken against the employee, the corporate defendant "is strictly liable for the supervisor's misconduct." <u>Ferraro v. Kellwood Co.</u>, 440 F.3d 96, 101 (2d Cir. 2006).

The Supreme Court has explained that a "tangible employment action" includes "discharge, demotion, or undesirable reassignment." <u>Faragher</u>, 524 U.S. at 808, 118 S. Ct. at 2293. In this case, there is no question that plaintiff was fired, and thus suffered a tangible employment action. Thus, the only question is whether there is evidence that shows the firing was the culmination of the harassment. The Second Circuit has explained that "[t]he word 'culminate' requires that the tangible employment action be linked to the supervisor's discriminatory harassment." <u>Ferraro</u>, 440 F.3d at 102. In this case, plaintiff specifically alleges that his firing was directly linked to the harassment, because Shigeta fired plaintiff in retaliation for complaining to Shigeta about the bathhouse incident. Supp. Biegel Decl., ¶¶ 22-23.

7

Therefore, the <u>Faragher-Ellerth</u> defense is forfeited.

This makes perfect sense, for two reasons. First, as noted, the employer cannot claim it exercised reasonable care to prevent and correct sexual harassment, if the head of the company threatened the employee with termination when he complained. See Point II.A <u>supra</u>. Second, when the harasser/supervisor actually fires the employee (for reasons directly related to the harassment itself), it defeats any suggestion that the supervisor was not acting with the authority of the company. As the Second Circuit has explained:

> The Supreme Court created the <u>Faragher-Ellerth</u> affirmative defense because it saw a difference between (1) situations in which the supervisor's harassing acts plainly invoked his official power and were therefore undoubtedly aided by the supervisor's agency relationship with the employer and (2) situations in which the use of official power in the supervisor's harassment was less clear and therefore the "aided-by-the-agency" relationship was "insufficiently developed." . . . . In the former situation, the official power granted by the employer to the supervisor was used to harass the employee, so the employer is held strictly liable for the supervisor's misconduct and the affirmative defense may not be raised.

<u>Ferraro</u>, 440 F.3d at 101 (citations omitted). Accordingly, Shigeta's termination of plaintiff, directly related to plaintiff's complaints of harassment, shows that the official power granted to Shigeta was used to further the harassment, and thus defeats the <u>Faragher-Ellerth</u> defense.

### C. The "*Faragher-Ellerth*" Affirmative Defense Is Also Forfeited Because The Supervisor/Harasser Invoked His Official Authority To Harass The Plaintiff

This brings us to the final reason why plaintiff's sexual harassment claim cannot be dismissed on this motion based on the <u>Faragher-Ellerth</u> defense. If the supervisor/harasser plainly invokes his official power to harass the employee, the employer is strictly liable anyway. <u>Ferraro</u>, 440 F.3d at 101. This can be true even for employer organized social events. In <u>Tomka v. The Seiler Corp.</u>, 66 F.3d 1295 (2d Cir. 1995), the supervisors used their apparent authority to pressure plaintiff to drink heavily at a company sponsored dinner, which plaintiff felt compelled to attend. The Court held this sufficed to render the employer liable for the supervisors' rape of the employee. <u>Id.</u> at 1306-07. In this case, plaintiff alleges in detail how Shigeta used his authority to compel plaintiff to attend "outings" such as the brothel and bathhouse, and how plaintiff was forced/duped into these sexually degrading experiences. Supp. Biegel Decl., ¶¶ 8-

11, 12-13, 15-16, 18; see also Amended Complaint, ¶¶ 21, 24, 27-29, 37-38. Shigeta was not a low level supervisor. He was the agency's head. Consequently, he was in an especially powerful position to invoke his official power to force plaintiff to be subjected to incidents such as the brothel and the bathhouse. As noted, where "the official power granted by the employer to the supervisor was used to harass the employee," then the "employer is held strictly liable for the supervisor's misconduct and the affirmative defense may not be raised." Ferraro, 440 F.3d at 101.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in plaintiff's prior opposition papers, defendants' motion to dismiss and/or for summary judgment should be denied in its entirety.

Dated: January 17, 2008                             Respectfully submitted,

                                                    THE DWYER LAW FIRM, L.L.C.
                                                    17 Academy Street, Suite 1010
                                                    Newark, New Jersey 07102
                                                    Attorneys for Plaintiff

                                        By:         _____
                                                    Andrew Dwyer (AD-7793)

9