UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE DWYER LAW FIRM, L.L.C.
17 Academy Street, Suite 1010
Newark, New Jersey 07102
(973) 242-3636
Andrew Dwyer (AD-7793)
Attorneys for Plaintiff

---

STEVE BIEGEL,

    Plaintiff,

v.

DENTSU HOLDINGS USA, INC.,
DENTSU AMERICA, INC.,
TOYO SHIGETA and
TIMOTHY ANDREE,

    Defendants.

---

: Hon. Colleen McMahon, U.S.D.J.

: Civil Action No. 07-9653 (CM) (THK)

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS, SUBMITTED PURSUANT TO LOCAL CIVIL RULE 56.1

Pursuant to Local Civil Rule 56.1(b), plaintiff Steve Biegel hereby submits the following Statement of Materials Facts. No Rule 56.1 Statement has yet been filed by defendants, and so there is no Rule 56.1 Statement to which plaintiff can respond. However, plaintiff submits that the following additional are material. Plaintiff contends there is a genuine issue to be tried as to these facts, and that as a consequence summary judgment may not be granted in favor of defendants.

1

1. Plaintiff does not recall ever being told by anyone at Dentsu anything about a sexual harassment policy. Plaintiff does not recall the issue being addressed in any kind of meeting or training. Supplemental Declaration of Steve Biegel, ¶ 3 (dated Jan. 15, 2008) (hereinafter "Supp. Biegel Decl.").

2. Plaintiff signed an "Acknowledgement Form" which states that he received a copy of Dentsu's "Policies and Procedures Employee Manual." However, the "Acknowledgement Form" does not say anything about a sexual harassment policy. Declaration of Douglas Fidoten, Exhibit C (dated Nov. 26, 2007) (hereinafter "Fidoten Decl.").

3. Plaintiff does not remember one way or the other whether, in fact, he received a copy of a "Policies and Procedures Employee Manual" at Dentsu. If he did receive it, however, he was not aware one way or the other whether it contained a sexual harassment policy, because he does not recall anyone ever mentioning to him that such a policy was found in a manual, or anywhere else. Supp. Biegel Decl., ¶ 5.

4. Defendants allege that the "Policies and Procedures Employee Manual" contained a sexual harassment policy. Fidoten Decl., ¶ 3. According to defendants, the putative sexual harassment policy states that an employee who has a complaint of sexual harassment "must bring the problem to the attention of their supervisor." Fidoten Decl., Exhibit B. The defendants' putative sexual harassment policy does *not* contain any language suggesting

that employees who complain of harassment will be protected from reprisal. Id.

5.  During the time plaintiff worked for defendants, plaintiff's immediate supervisor was at all times Ron Rosen. During most of the time plaintiff worked at Dentsu (and during the incidents in question), Mr. Rosen's supervisor was Toyo Shigeta. Therefore, Mr. Shigeta was plaintiff's next level supervisor. During most of the time plaintiff worked at Dentsu, there was no one else in his chain of command. This did not change until the summer of 2006, when Timothy Andree was hired, and he became Mr. Rosen's supervisor (and thus in plaintiff's chain of command). Supp. Biegel Decl., ¶ 6.

6.  Douglas Fidoten also worked for defendants during the time plaintiff was working for defendants. However, Mr. Fidoten was not actually in plaintiff's chain of command during most of the incidents of harassment described in the Amended Complaint. However, when Timothy Andree became CEO of Dentsu America in the summer, 2006, Mr. Fidoten became President and then was in plaintiff's chain of command. Supp. Biegel Decl., ¶ 7.

7.  Because all of the incidents involved Mr. Shigeta, plaintiff did not consider him a viable candidate with whom to register a complaint – that is, it did not make a great deal of sense to complain directly to Mr. Shigeta about his own conduct. This was particularly so because the atmosphere at Dentsu was one where plaintiff frequently felt employees were at risk of being fired at

whim by Mr. Shigeta. Mr. Shigeta would periodically fly into rages and scream at employees, threatening to fire them. For example, in one instance where Randy Novick (who is Jewish) made a small complaint or comment to Mr. Shigeta. Mr. Shigeta became livid, and threatened to fire Mr. Novick (telling him "I'm going to fire you"). In fact, Mr. Novick later was fired. Supp. Biegel Decl., ¶ 8.

8. Although Mr. Shigeta regularly expressed happiness with plaintiff's work, he also treated every project as a crisis, and frequently expressed the view that if a project did not go well, people on the creative team could be fired. One of his favorite expressions (in describing what would happen if something did not go well), was to say, "It could be your head." Supp. Biegel Decl., ¶ 9.

9. Mr. Shigeta was also very unpredictable and volatile generally. When plaintiff raised any complaint about him to Mr. Fidoten, Mr. Fidoten would commonly shrug and say he could do nothing to control Mr. Shigeta. Given that Mr. Shigeta was the very highest official in the company, this contributed to an atmosphere of fear, which in turn discouraged any kind of dissent. Supp. Biegel Decl., ¶ 10.

10. Finally, the culture of the company was such that employees were always expected to be slavishly deferential to their "superiors." Even inadvertent physical gestures, or the failure to show sufficient gratitude, could be interpreted as signs of disrespect, warranting punishment. This also

contributed to an atmosphere where plaintiff was quite reluctant to raise any kind of complaint – especially any complaint directed against Mr. Shigeta. Supp. Biegel Decl., ¶ 11.

11.    In or around June, 2004, plaintiff was required to travel to Prague, along with Mr. Shigeta, to complete a shoot for a commercial for Canon. It was strongly impressed on plaintiff by Mr. Shigeta that this was a terribly important project, and that failure to carry out this project well would mean people would lose their jobs. Given the nature of the project, and the atmosphere surrounding this work, plaintiff had a strong sense that he should not do anything to make waves. Supp. Biegel Decl., ¶ 12.

12.    It was on this trip that Mr. Shigeta took plaintiff and Scott Weitz (a producer, who was not a Dentsu employee) to a brothel in Prague. This event was organized by Mr. Shigeta as a required company outing. He arranged where they were going (without telling plaintiff and Weitz), arranged for the car, took them to the brothel, and paid for the event. Thus, this was very much an event where Mr. Shigeta used his authority as plaintiff's supervisor's supervisor (and as the head of the company) to force plaintiff to participate in this harassing event. Supp. Biegel Decl., ¶ 13.

13.    There was no other Dentsu employee on this trip, and thus no one else plaintiff could complain to, other than Mr. Shigeta himself. However, immediately when he returned from the trip (therefore, sometime in June, 2004), plaintiff approached his immediate supervisor, Ron Rosen, and told

him what had happened. Plaintiff complained to Mr. Rosen about being forced and tricked to go to the brothel, and explained why the visit had made him uncomfortable and left him feeling humiliated. Supp. Biegel Decl., ¶ 14. Mr. Rosen has confirmed that plaintiff complained to him about this outing to the brothel. Declaration of Ron Rosen, ¶ 10 (dated Feb. 3, 2007) (hereinafter "Rosen Decl."), **annexed as Exhibit B to** Declaration of Andrew Dwyer (dated Nov. 29, 2007) (hereinafter "Dwyer Decl."). Other than Mr. Rosen, there was no one else in plaintiff's chain of command to complain to about this incident. Supp. Biegel Decl., ¶ 14.

14. Another incident occurred in October, 2004, when Mr. Shigeta, plaintiff and other Dentsu employees traveled to Japan. Mr. Rosen and Mr. Fidoten were both on this trip. The idea of this trip was to introduce plaintiff, Rosen and Fidoten to high level officials at Dentsu, Inc., in Japan, the parent company of their employer. It was on this trip that plaintiff was forced to go to a bathhouse and take off all his clothes in front of his boss, Mr. Shigeta, and then take a bath with him. Supp. Biegel Decl., ¶ 15.

15. As with the trip to the brothel in Prague, Mr. Shigeta did not tell the Dentsu employees where they were going or what they were doing, but simply told them they were going on an outing. This was something organized and arranged for by Mr. Shigeta, and paid for by him as well (or paid for by the company). Thus, this is another instance where Mr. Shigeta

used his power as the company's highest official to force plaintiff to participate in this outing. Supp. Biegel Decl., ¶ 16.

16. When plaintiff and the others arrived in the undressing room for the bath, Mr. Shigeta commanded them to "get naked." Plaintiff tried to figure out from Mr. Shigeta what was going on, and Shigeta told them that they were going to take a bath together. At this point, plaintiff specifically confronted Mr. Shigeta and complained about this, saying to him words to the effect, "I am not taking a bath with you." In response, Mr. Shigeta retorted, "yes, you will." Mr. Shigeta then went off into a separate area of the undressing room to get undressed, away from the rest of the Dentsu employees. Supp. Biegel Decl., ¶¶ 17-18.

17. Plaintiff turned to Mr. Rosen at that point, and complained about what was happening, and specifically about how uncomfortable he felt being required to take a bath in the nude with his boss. Supp. Biegel Decl., ¶ 19.

18. Plaintiff also went over to Mr. Fidoten, by which point he was quite upset. Plaintiff said words to Mr. Fidoten to the effect of, "this is f_____ ridiculous, why do I have to take a bath with this nut?" In response to plaintiff's complaint, Mr. Fidoten merely shrugged, and said "when in Rome . . . ." Supp. Biegel Decl., ¶ 20.

19. Plaintiff later again complained to Mr. Rosen about this incident, namely, that he felt uncomfortable and humiliated, and felt that he had been manipulated and forced to take part. Supp. Biegel Decl., ¶ 21.

7

20. Again, Mr. Rosen has confirmed that plaintiff complained to him about the bathhouse incident, and in particular about having to disrobe and walk naked in front of Mr. Shigeta. Rosen Decl., ¶ 9, **annexed as Exhibit B to** Dwyer Decl.

21. In or about May, 2006, plaintiff learned that Mr. Shigeta was planning another trip to Japan, and that on this trip he was planning to take another Dentsu employee, Neal Gomberg. Plaintiff approached Shigeta about the anticipated trip to Japan, and plaintiff brought up the fact that Shigeta was taking Mr. Gomberg. Plaintiff then specifically raised with Shigeta the experience plaintiff had had at the bathhouse, and plaintiff told Mr. Shigeta not to take Mr. Gomberg to the bathhouse. Plaintiff told Mr. Shigeta how humiliating and uncomfortable the experience had made him. Plaintiff further told Shigeta that plaintiff was so angered by the experience that he had thought about complaining to human resources. At this point, Mr. Shigeta gave a little laugh, and then became quite serious, and said to plaintiff words to the effect that if plaintiff had complained, Shigeta would have fired him. Repeating himself but in the present tense, Shigeta then said words to the effect, "if you say anything about it, I will fire you." Shigeta then looked at plaintiff, pursing his lips together, and nodded his head vigorously several times. Plaintiff then turned on his heels and walked away. This threat, which plaintiff took quite seriously, strongly discouraged him from making any further complaints about Mr. Shigeta. Supp. Biegel Decl., ¶ 22.

22.  Plaintiff contends that his subsequent firing was directly related to the harassment, and to his complaint to Mr. Shigeta about his harassing conduct. Supp. Biegel Decl., ¶ 23.

23.  Other than when Mr. Shigeta threatened to fire plaintiff for complaining in May, 2006 (and when Mr. Fidoten shrugged in response to plaintiff's complaint at the bathhouse), plaintiff never received any response from anyone at Dentsu to any of his complaints regarding Mr. Shigeta's sexual behavior.

                                                Respectfully submitted,

                                                THE DWYER LAW FIRM, L.L.C.
                                                Attorneys for Plaintiff

By: _____
          Andrew Dwyer (AD-3793)

Dated: January 17, 2008