**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York 10178
212.309.6000
Amber Kagan (AK-7973)
Jill Barbarino (JB-6385)

**LANDMAN CORSI BALLAINE & FORD P.C.**
120 Broadway, 27th Floor
New York, New York 10271
212.238.4800
Daniel S. Moretti (DM-6630)

Attorneys for Defendants Dentsu Holdings USA, Inc.,
Dentsu America, Inc., Toyo Shigeta and Timothy Andree

**UNITED STATE DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- x
 :
**STEVE BIEGEL,** :
 :
     **Plaintiff,** :
 :
 : **07 Civ. 9653 (CM) (THK)**
 -against- :
 :
 :
**DENTSU HOLDINGS USA, INC.,** :
**DENTSU AMERICA, INC., TOYO** :
**SHIGETA and TIMOTHY ANDREE,** :
 :
     **Defendants.** :
 :
 :
------------------------------------- x

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN**
**FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED**
**COMPLAINT**

1-PR/1367206.3

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. STANDARD OF REVIEW .................................................................................................. 1

III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON BIEGEL'S SEXUAL HARASSMENT CLAIM UNDER THE FARAGHER-ELLERTH AFFIRMATIVE DEFENSE ............................................................................................ 2

    A. Dentsu Exercised Reasonable Care To Prevent And Correct Promptly Any Sexually Harassing Behavior. ...................................................................... 3

    B. Biegel Never Put Defendants On Notice Of Any Alleged Sexual Harassment And, Therefore, Did Not Reasonably Avail Himself Of The Corrective Opportunities Made Available To Him By .......................................... 4

IV. IN THE ABSENCE OF A TANGIBLE EMPLOYMENT ACTION THAT IS DIRECTLY RELATED TO THE HARASSMENT, NEITHER DENTSU HOLDINGS NOR DENTSU AMERICA CAN BE STRICTLY LIABLE FOR THE ALLEGED ACTS OF SHIGETA ........................................................................... 7

V. CONCLUSION ..................................................................................................................... 9

Case 1:07-cv-09653-CM-THK    Document 28    Filed 01/22/2008    Page 3 of 15

## TABLE OF AUTHORITIES

Page

Celotex Corp. v. Cartrett,
 477 U.S. 317, 322 n.4 (1986), cert. denied 484 U.S. 1066 (1988)………………….…1

Rosen v. Thornburgh,
 928 F.2d 528, 532 (2d Cir. 1991) …………………………………………………...1

Anderson v. Liberty Lobby, Inc.,
 477 U.S. 242, 248 (1986) ………..……………………………………………...1

Murray v. Xerox Corp.,
 811 F.2d 118, 121 (2d Cir. 1987) ..……………………………………………...1

JSP Agency, Inc. v. Am. Sugar Ref. Co.,
 752 F.2d 56, 59 (2d Cir. 1985) ..…………………………………………………1, 2

Project Release v. Prevost,
 722 F.2d 960, 968 (2d Cir. 1983) ..……………………………………………...2

Apex Oil Co. v. DiMauro,
 822 F.2d 246, 252 (2d Cir.), Cert. denied 484 U.S. 977 (1987)………………………..2

First Nat'l Bank of Ariz v. Cities Serv. Co.,
 391 U.S. 253, 289 reh'g denied, 393 U.S. 901 (1968)…………………………………..2

Quinn v. Syracuse Model Neighborhood Corp.,
 613 F.2d 438, 445 (2d Cir. 1980)……………………………………………………...2

Riverside Holdings, Inc. v. Arkansas Best Corp.,
 90-Civ. 5492, 1996 U.S. Dist. LEXIS 5316…………………………………………...2

Christensen v. Bristol-Myers Squibb Co.,
 86 Civ. 0183, 1994 WL 469382, aff'd in relevant part, rev'd in part,57 F.3d 1063
(2d Cir. 1995) ………………………………………………………………………...2

Cronin v. ITT Corp.,
 737 F. Supp. 224, 228-29 (S.D.N.Y.), aff'd without op., 916 F.2d 709 (2d Cir. 1990)  ...2

Abdu-Brisson v. Delta Air Lines, Inc.,
 239 F.3d 456, 466 (2d cir. 2001) …………………………………………………...2

Meiri v. Dacon,
 759 F.2d 989, 998 (2d Cir. 1985) …………………………………………………...2

## TABLE OF AUTHORITIES

Page

Big Apple Tire, Inc. v. Telesector Res. Group Inc.,
    476 F.Supp.2d 314, 324 (S.D.N.Y. 2007) ……………………………………………...2

Faragher v. City of Boca Raton,
    524 U.S. 775, 118 S. CT. (1998) ……………………………………………………2, 9

Burlington Indus. Inc. v. Ellerth,
    524 U.S. 742, 118 S. Ct. 2257 (1988) ……………………………………………….2, 9

Finnerty v. William Sadlier, Inc.,
    176 Fed. Appx. 158, 162 (2d Cir. 2006) ……………………………………………  3, 4, 7

Leopold v. Baccarat Inc.,
    239 F.3d 243, 245 (2Cir. 2001) ……………………………………………………3, 4

Caridad v. Metro-North Commuter R.R.,
    191 F.3d 283, 295 (2d Cir. 1999) …………………………………………………...3

Ferraro v. Kellwood Co.,
    440 F.3d 96, 102 (2d Cir. 2006) ……………………………………………………4, 7

Murray v. New York Univ. College of Dentistry,
    57 F.3d 243 (2d Cir. 1995) ……...…………………………………………………...4

Schmidt v. State Univ. of New York at Stoneybrook,
    No. 02CV6083 (SLT), 2006 U.S. Dist. 27663  …………………………………….5, 6

O'Dell v. Trans. World Entmt. Corp.,
    153 F.Supp.2d 378, 397 (S.D.N.Y. 2001) …………………………………………..5, 6

Madray v. Publix Supermarkets, Inc.,
    208 F.3d 1290, 1300-01 (11th Cir. 2000) …………………………………………...5

Dayes v. Pace Univ.,
    No. 98 Civ. 3765, 2000 WL 307382  ………………………………………………...7

Steffy v. Ford Motor Co.,
    2007 U.S. Dist. LEXIS 20524 (1986)………………………………………………...7

Eichler v. Am. Int'l Group,
    No. 5167, 2007 U.S. Dist Lexis 23445 ……………………………………………...8

## TABLE OF AUTHORITIES

**Page**

Carter v. State of New York,
    310 F.Supp.2d 468, 478 (N.D.N.Y. 2004) ……………………………………………...8

Prince v. Madison Square Garden,
    427 F.Supp.2d 372, 385-85 (S.D.N.Y. 2006) …………………………………………...9

Tomka v. The Seiler Corp.,
    66 F.3d 1295 (2d Cir. 1995) ……..…………………………………………………...9

**I.      INTRODUCTION**

Defendants Dentsu Holdings USA, Inc. ("Dentsu Holdings"), Dentsu America, Inc. ("Dentsu America") (collectively referred to herein as "Dentsu"), Toyo Shigeta ("Shigeta"), and Timothy Andree ("Andree") (collectively referred to herein as "Defendants") respectfully submit this Supplemental Memorandum of Law In Support of Their Motion to Dismiss, a portion of which has been converted into a motion for summary judgment for the purpose of Defendants' assertion of the Faragher-Ellerth affirmative defense. Since Plaintiff Steven Biegel ("Plaintiff" or "Biegel") has created no genuine issue of material fact as to the two prongs of the Faragher-Ellerth test – the existence and adequacy of Dentsu's internal complaint process and Biegel's failure to avail himself of the company's internal processes designed to address and correct complaints of harassment – summary judgment in favor of Defendants should be granted with respect to Plaintiff's sexual harassment claim.

**II.     STANDARD OF REVIEW**

Fed. R. Civ. P. 56(c) provides that summary judgment "shall be rendered forthwith" if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 n.4 (1986); Rosen v. Thornburgh, 928 F.2d 528, 532 (2d Cir. 1991). Thus, federal courts are required to grant summary judgment unless the non-moving party comes forward with affirmative evidence which clearly demonstrates that there exists a genuine issue of material fact to be tried. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Murray v. Xerox Corp., 811 F.2d 118, 121 (2d Cir. 1987) (non-moving party must prove the existence of an issue of fact which is both "genuine" and "material").

In order to prove that a genuine issue of material fact exists, Plaintiff "may not rest upon the mere allegations or denials of the pleadings." Fed. R. Civ. P. 56(e); see e.g., JSP Agency,

- 1 -

Inc. v. Am. Sugar Ref. Co., 752 F.2d 56, 59 (2d Cir. 1985); Project Release v. Prevost, 722 F.2d 960, 968 (2d Cir. 1983). Rather, Plaintiff must "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977 (1987); First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289, reh'g denied, 393 U.S. 901 (1968). Mere conclusory allegations, opinions, or subjective beliefs are not evidence and cannot, by themselves, create a genuine issue of material fact. See Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980); Riverside Holdings, Inc. v. Arkansas Best Corp., 90-Civ. 5492, 1996 U.S. Dist. LEXIS 5316, at *21 (S.D.N.Y. Apr. 22, 1996); Christensen v. Bristol-Myers Squibb Co., 86 Civ. 0183, 1994 WL 469382, at *7 (S.D.N.Y. Aug. 31, 1994), aff'd in relevant part, rev'd in part, 57 F.3d 1063 (2d Cir. 1995); see also Cronin v. ITT Corp., 737 F. Supp. 224, 228-29 (S.D.N.Y.), aff'd without op., 916 F.2d 709 (2d Cir. 1990).

Moreover, "[i]t is now beyond cavil" that summary judgment is routinely granted in discrimination cases. Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001). "'[T]he salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to . . . other areas of litigation.' " Id. (quoting Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.1985)). Indeed, "Courts within the Second Circuit have not hesitated to grant defendants summary judgment in such cases where . . . plaintiff has offered little or no evidence of discrimination." Big Apple Tire, Inc. v. Telesector Res. Group, Inc., 476 F.Supp.2d 314, 324 (S.D.N.Y. 2007).

### III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON BIEGEL'S SEXUAL HARASSMENT CLAIM UNDER THE FARAGHER-ELLERTH AFFIRMATIVE DEFENSE.

Under the Supreme Court decisions of Faragher v. City of Boca Raton, 524 U.S. 775 (1998) and Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 765 (1998), an employer will not be

liable for the harassment of its supervisors if: (1) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) "the [p]laintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  The undisputed evidence, as stated in the various affidavits that have been submitted to the Court, reveals that Defendants can establish both prongs of this analysis and, therefore, summary judgment is appropriate.

### A. Dentsu Exercised Reasonable Care To Prevent And Correct Promptly Any Sexually Harassing Behavior.

It is well established that "[o]ne way for employers to demonstrate that they exercise reasonable care is to show that they had an anti-harassment policy in place." Finnerty v. William Sadlier, Inc., 176 Fed. Appx. 158, 162 (2d Cir. 2006); see also Leopold v. Baccarat Inc., 239 F.3d 243, 245 (2d Cir. 2001) (holding that the employer satisfied first prong of Faragher-Ellerth defense because anti-harassment policy instructed employees to speak to "any officer of the company," despite policy's failure to guarantee confidentiality and non-retaliation); Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 295 (2d Cir. 1999) (holding that employer satisfied first prong of Faragher-Ellerth defense because employer had an anti-harassment policy in place with a procedure for filing complaints).  In the instant case, the undisputed facts show that Dentsu America had such a policy in place and that Plaintiff knew or should have known of that policy.

When Plaintiff was hired by Dentsu America, he signed a form acknowledging that he received the "Policies and Procedures Employee Manual" dated December 1997 (the "Employee Manual").  (Fidoten Decl. at ¶ 3, Ex. B; Biegel Supp. Aff. ¶ 4).  By signing that acknowledgement form, Plaintiff agreed that it was his "responsibility as an employee to read

and comply with the policies and procedures contained in the manual." (Fidoten Decl. at ¶ 3, Ex. C).

The Employee Manual contains Dentsu America's Sexual Harassment Policy. (A copy of the Employee Manual is attached as Exhibit A to the Affidavit of Jill Barbarino). That policy requires an employee to bring complaints of sexual harassment to his or her supervisor. However, the policy goes on to state: "[i]f the complaint involves someone in the employee's direct line of command, then the employee may bring it to the attention of the Administrative Officer." (Barbarino Aff., Exh. A). The policy assures employees that all complaints will be promptly handled and appropriate corrective action will be taken.

Thus, Dentsu America had a harassment policy that provided an appropriate complaint procedure. Moreover, as Plaintiff signed a form agreeing to familiarize himself with the contents of the Employee Handbook, he knew or should have known of that procedure.[1] Accordingly, Dentsu "exercised reasonable care to prevent and correct promptly any [sexually] harassing behavior" and has met its burden under the first prong of the Faragher-Ellerth analysis. See Ferraro v. Kellwood Co., 440 F.3d 96, 102 (2d Cir. 2006); Finnerty, 176 Fed. Appx. at 162; Leopold, 239 F.3d at 246.

### B. Biegel Never Put Defendants On Notice Of Any Alleged Sexual Harassment And, Therefore, Did Not Reasonably Avail Himself Of The Corrective Opportunities Made Available To Him.

In order to "take advantage of any preventative or corrective opportunities provided by the employer," an employee must engage in conduct that is sufficient to put the employer on notice that sexual harassment is occurring. See Murray v. New York Univ. College of Dentistry,

---

[1] While Plaintiff asserts that he never saw the sexual harassment policy, he concedes that he signed the acknowledgment form and does not dispute the existence of the policy for purposes of this motion. (See Pl. Supp. Opp., at p. 3-4.)

57 F.3d 243 (2d Cir. 1995); Schmidt v. State Univ. of New York at Stoneybrook, No. 02-CV-6083 (SLT), 2006 U.S. Dist. LEXIS 27663, at *39-40 (E.D.N.Y. May 5, 2006); O'Dell v. Trans. World Entmt. Corp., 153 F. Supp. 2d 378, 397 (S.D.N.Y. 2001).  General complaints, without some indication that the complained of conduct constituted a pattern of sexually harassing behavior, are insufficient to put the employer on notice of the harassment.  See Schmidt, 2006 U.S. Dist. LEXIS 27663 at *39-40 (plaintiff's comment that she was "uncomfortable" "fell short of establishing constructive notice of harassment"); Madray v. Publix Supermarkets, Inc., 208 F.3d 1290, 1300-01 (11th Cir. 2000) (the recipient of the complaint could not have been expected to take action with regard to plaintiff's comment that her supervisor's behavior was offensive when the plaintiff failed to "indicate that th[e] incident [complained of] was part of an on-going pattern of sexually harassing behavior or that she wanted [the manager] to take action to stop [the] inappropriate behavior").

In the instant case, Plaintiff claims to have made the following "complaints":

- He told Ron Rosen, his supervisor, that Shigeta "forced and tricked [him] to go to the brothel" and that the visit made him feel "uncomfortable" and "humiliated." (Biegel Supp. Decl. ¶ 14).

- While at the bathhouse, he told Mr. Rosen that he was "uncomfortable." (Biegel Supp. Decl. ¶ 19).

- While at the bathhouse, he told Doug Fidoten, who was not his supervisor at the time, that "this is f_____ ridiculous, why do I have to take a bath with this nut." (Biegel Supp. Decl. ¶ 20).

- He later again told Mr. Rosen that the bathhouse made him feel "uncomfortable and humiliated." (Biegel Supp. Decl. ¶ 21).

Even assuming Plaintiff made these comments,[2] which Defendants do only for purposes of this motion, they were insufficient to put Defendants on notice that Plaintiff: (1) believed he was being sexually harassed; or (2) wanted Defendants to take any actions to stop the alleged conduct. Indeed, it would not have been intuitively obvious that Plaintiff felt he was being harassed because of his sex when Shigeta took him to a bathhouse or a brothel.[3] Rather, his comments, assuming they were made, indicated only that those experiences made him uncomfortable, which is clearly insufficient to meet the second prong of the Faragher-Ellerth test. See e.g., Schmidt, 2006 U.S. DIST LEXIS 276633, at *39-40 (holding that employer failed to satisfy second prong of Faragher-Ellerth defense because comments such as feeling "uncomfortable" and that supervisor was "overbearing" insufficient to establish constructive notice of harassment).

The closest Plaintiff comes to having made a complaint of harassment relates to his alleged conversation with Shigeta in May 2006.[4] (Biegel Supp. Decl. ¶ 22). However, that conversation supposedly took place over 1 ½ years after the complained of incident and is too attenuated in time to defeat a Faragher-Ellerth affirmative defense. See e.g., Schmidt, 2006 U.S. Dist. LEXIS 27663, at *43-44 ("Because [plaintiff] waited more than a year from the [allegedly harassing] event to complain . . . [p]laintiff failed to reasonably avail herself of the remedial

---

[2] To the extent that Plaintiff alleges that he was harassed based on his Jewish ethnicity, he makes no allegation that he complained to anyone of racial or religious harassment.

[3] While similar conduct in an opposite sex harassment case might suggest, without more, a pattern of harassment, that is not the case in this same sex harassment case. It is not alleged that Shigeta took Plaintiff to these places for the purpose of engaging in any sexual conduct with him or that any sexual overtures were made, and the fact that these incidents supposedly made Plaintiff uncomfortable does not suggest that he believed he was being sexually harassed.

[4] It is undisputed that Biegel failed to bring his complaints to the attention of an Administrative Officer, as is encouraged by Dentsu America's Sexual Harassment Policy. (Barbarino Aff., Exh. A).

measures available by [the defendant]"); O'Dell, 153 F. Supp. 2d at 391 (plaintiff's delay of nearly one year in complaining of supervisor's harassment "demonstrates that [plaintiff] unreasonably failed to take advantage of [the employer's] preventative and corrective opportunities"); Dayes v. Pace Univ., No. 98 Civ. 3675, 2000 WL 307382, at *6 (S.D.N.Y. Mar. 24, 2000) (plaintiff's one year delay in bringing forth complaint from the inception of harassment was found to be "unreasonable as a matter of law").

Moreover, a complaint to the alleged harasser is insufficient to put an employer on notice of alleged harassment. See Steffy v. Ford Motor Co., Inc., No. 04-CV-319S, 2007 U.S. Dist. LEXIS 20524, at *43 (W.D.N.Y. Mar. 22, 2007). Thus, Defendants have established that they are entitled to the benefit of the Faragher-Ellerth defense. Consequently, Plaintiff's harassment claims should be dismissed.

IV. **IN THE ABSENCE OF A TANGIBLE EMPLOYMENT ACTION THAT IS DIRECTLY RELATED TO THE HARASSMENT, NEITHER DENTSU HOLDINGS NOR DENTSU AMERICA CAN BE STRICTLY LIABLE FOR THE ALLEGED ACTS OF SHIGETA.**

Recognizing that Defendants have asserted a viable Faragher-Ellerth defense, Plaintiff claims that such a defense is "forfeited" and Dentsu is strictly liable for the alleged harassing conduct. (See Pl. Supp. Opp., at p. 7-9). However, as Plaintiff acknowledges, to be strictly liable for a supervisor's alleged harassment that harassment must have culminated in a tangible employment action against the Plaintiff. See Finnerty, 176 Fed. Appx. at 162; Ferraro, 440 F.3d at 101. To meet this standard, there must be a direct connection between the supervisor's alleged harassment and the tangible employment action at issue, such as when an employee is terminated for refusing to submit to the harassing conduct. Finnerty, 176 Fed. Appx. at 162 ("Here, by comparison, Finnerty does not contend that Richards explicitly threatened her with termination or otherwise formally altered or threatened to alter her job responsibilities if she did not submit

to his advances. [Therefore], there is no evidence from which a rational juror could conclude that Finnerty suffered a tangible employment action as a result of Richard's alleged harassment."); Eichler v. Am. Int'l Group, No. 05-Civ. 5167, 2007 U.S. Dist. LEXIS 23445, at *24 (S.D.N.Y. Mar. 30, 2007) ("[I]f the employer either took no tangible employment action, or any tangible employment action was not part of the supervisor's discriminatory harassment, the employer may have recourse to the so-called *Faragher/Ellerth* affirmative defense.")

In the present case, while Plaintiff "contend[s]" that his termination "was directly related to the harassment," (Biegel Supp. Decl. ¶ 23) there is no evidence to support that conclusory assertion. To the contrary, the facts – as alleged in Plaintiff's Amended Complaint – belie such a notion. In that regard, Plaintiff alleges that he was subjected to a few incidents of harassment which occurred in April 2004 (Am. Compl. ¶ 34), June 2004 (Am. Compl. ¶¶ 18-30), October 2004 (Am. Compl. ¶¶ 36-38), and April 2005 (Am. Compl. ¶ 35). The tangible employment action about which he complains – his termination – did not occur until November 2006. (Am. Compl. ¶ 47). Plaintiff has not alleged that his termination, which occurred anywhere from 1 ½ to 2 ½ years after the alleged harassment, occurred because of his refusal to participate in the alleged harassment or was otherwise the culmination of that harassment. Indeed, the extended time between the alleged harassment and Plaintiff's termination is too great to support such an assertion. See Steffy, 2007 U.S. Dist. LEXIS 20524, at *43 ("[A]lthough Defendant eventually terminated Plaintiff's employment, it took no tangible action against Plaintiff during the time period that she maintains a hostile work environment existed."); Carter v. State of New York, 310 F. Supp. 2d 468, 478 (N.D.N.Y. 2004) (4-month lapse between the alleged harassment and the tangible employment action is too remote to suggest a causal connection).

Thus, Plaintiff cannot show that his termination was the culmination of the alleged harassment.[5] Accordingly, Defendants cannot be held strictly liable for the harassment alleged in the Amended Complaint.[6]

## V.     CONCLUSION

In short, Dentsu has demonstrated that it had a sexual harassment policy and reporting mechanism in place to address claims of harassment.  Plaintiff, however, did not reasonably take advantage of that policy.  Accordingly, Biegel's sexual harassment claims against Defendants must be dismissed.

                                                            Respectfully submitted,

                                                            **MORGAN, LEWIS & BOCKIUS LLP**


                                                            By:____s/ Jill Barbarino_____
                                                                  Amber Kagan (AK-7973)
                                                                  Jill Barbarino (JB-6385)

                                                                  *Attorneys for Defendants*

Dated:  January 22, 2008

---

[5]     Recognizing that there exists no connection between the alleged harassment and his termination, Plaintiff ties his termination to his alleged "[complaint] to Shigeta about the bathhouse incident." (See Pl. Supp. Opp. at p. 7.)  However, any allegation that Plaintiff was terminated for complaints he allegedly made states a claim for retaliation and does not serve as a connection between the alleged harassment and his termination for purposes of imputing strict liability to Defendants.  See Prince v. Madison Square Garden, 427 F. Supp. 2d 372, 384-85 (S.D.N.Y. 2006) (employer not automatically liable for acts of supervisor because plaintiff's allegation that she was terminated for complaining of sexual harassment was not "a tangible employment action as a result of any alleged harassment").  If that were the case, there would be strict liability in any instance where, in addition to sexual harassment, a Plaintiff pleads a retaliation claim.  That is clearly not the law.

[6]     Biegel's reliance on Tomka v. The Seiler Corp., 66 F.3d 1295 (2d Cir. 1995) is misplaced.  Tomka predates both the Faragher and the Ellerth decisions, which clearly state that when "no tangible employment action is taken, a defending employer may raise an affirmative defense to liability."  See Faragher v. City of Boca Raton, 524 U.S. 775, 807 118 S.Ct. 2275, 2293 (1998); see also Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257 (1998).

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the following documents:

1. *Defendants' Supplemental Memorandum of Law in Further Support of Their Motion to Dismiss the Amended Complaint;*

2. *Affidavit of Jill Barbarino*

were served, via ECF, on this 22nd day of January, 2008, upon:

>Andrew Dwyer
>17 Academy Street, Suite 1010
>Newark, New Jersey 07102
>tel: (973) 242-3636
>
>Counsel for Plaintiff
>
>    s/Jill Barbarino
>    Jill Barbarino